[Civil No. 4094. Filed April 24, 1939.]

[89 Pac. (2d) 624.]

JOHN L. WALL, CHARLES P. WINGFIELD and JOHN HEATH, Petitioners, v. SUPERIOR COURT OF YAVAPAI COUNTY, ARIZONA, and LEVI S. UDALL, Judge of the Superior Court of Apache County, Arizona, Acting as Judge of Said Superior Court of Yavapai County, Arizona, Respondents.

Messrs. Patterson & Eastvold, for Petitioners.

Messrs. O'Sullivan & Morgan and Mr. Leo T. Stack, for Respondents.

LOCKWOOD, J.—John L. Wall, Charles P. Wingfield and John Heath, hereinafter called petitioners, filed an application in this court for a writ of *certiorari,* directed to the superior court of Yavapai county, to review a certain action of said court. Notice of the application was served on the court, and Fred Back, Fred Boyd, Walter Wingfield and Ida B. See, hereinafter called respondents, who were the parties beneficially interested by the proceedings in the superior court of Yavapai county which the petitioners herein desired to have reviewed, filed an objection and a motion to dismiss the petition. Such an appearance

is perhaps unusual, but since no objection has been made thereto by petitioners, and since the issues involved can be determined as well upon the objection of respondents as on a return made by the superior court and the judge thereof, we shall consider the motion to dismiss as regularly and properly made. As a rule we do not file written opinions on motions to dismiss, but in view of the issues involved, we have concluded to depart from our usual custom in that respect.

The petition is based upon the following situation: In the year 1900, the predecessors in interest of some of the respondents herein filed an action in the district court of the territory of Arizona against a number of defendants, some of whom were the predecessors in interest of the petitioners herein. The complaint set up the ownership of certain lands by the plaintiffs and defendants, alleging in substance that there were conflicting claims by the owners of such lands to the use of the waters of Clear Creek, a stream in Yavapai county, for the purpose of irrigation, and concluded with the prayer:

"That the rights of the several plaintiffs and defendants may be fixed, adjudicated and determined by the judgment and decree of this court according to the respective rights of the parties, and that defendants be restrained and enjoined from in any manner interfering with the rights of plaintiffs to the use of said waters as hereinabove set forth for the purpose of irrigating their lands, and for such further relief as to this court of equity may seem meet and proper, and for costs of suit."

The defendants filed various demurrers and answers, and the case was finally submitted to the court on a stipulation by all the parties. This stipulation reads, so far as material, as follows:

"It is hereby stipulated and agreed between the plaintiffs in the above entitled action, by and through their attorneys, Herndon & Norris; and the defendants

in the above action by and through their attorneys, J. J. Hawkins and J. H. Jacks, that a decree shall be entered and an order of the court enjoining and restraining any violation of the rights herein and in said decree fixed and determined.

"It is stipulated that the waters described in the complaint may be divided and decreed as follows: (setting up the respective rights of plaintiffs).

"And it shall also be ordered and awarded in said decree that plaintiffs are entitled to 475 inches of the waters of said stream at all times of the year; and when there is more than sufficient water to supply the amounts respectively awarded as above, the same shall be prorated between the plaintiffs and defendants according to their respective interests.

"The measurement of the waters as herein distributed shall be as follows: By means of a box placed at the head gate or convenient place at the head of each ditch, 16 feet long, with a fall of 2 inches under a 4 inch pressure. And what is meant by a 4 inch pressure is that the water shall be 4 inches above the upper portion of the aperture.

"And it is provided that the decree when so entered shall be binding and conclusive with the same force and to the same extent as if the case had been tried before the court, all the testimony to determine the rights of the parties had been submitted, and the decree based on the findings of the court regularly made."

In pursuance of said stipulation, the court made the following findings:

"1. That Clear Creek is a running stream of water in Verde Valley, Yavapai County, Arizona, adjacent to the lands described in the pleadings, and that the lands are arable and irrigable lands in said Valley, and that by means of irrigation with the waters of said stream are capable of producing valuable crops of hay, grain, vegetables and fruit.

"2. That plaintiffs are entitled to the first right to the use of the waters of said stream to the extent of 475 inches through the irrigating season, to-wit: The months of May, June, July, August and September.

(Setting up the respective rights of plaintiffs and defendants).

"That plaintiffs are entitled during all the year to 475 inches of the water, and in seasons of the year where there is more water in said stream than sufficient to supply the amounts above found, the excess shall be divided by the parties according to their respective rights.

"That a proper measurement of the water for distribution among said parties is by means of a box 16 feet long with a fall of two inches to the 16 feet under a four inch pressure. What is meant by a 4 inch pressure is water four inches deep above the upper portion of the aperture at the point of measurement."

And judgment was rendered as follows:

"Wherefore, it is ordered, adjudged and decreed in favor of plaintiffs and against defendants that the plaintiffs are and shall hereafter be recognized as the owners of the respective tracts of land above described.

"They are further hereby adjudged and decreed to the first right and use of the waters of Clear Creek to the extent of 475 inches during each entire year; . . . And defendants, their attorneys, agents, employees, successors, representatives and assigns are hereby enjoined and restrained perpetually from in any manner interfering with the exclusive prior right of plaintiffs to the use of the flow of 475 inches of the waters of said stream, or any part thereof. . . . "

In the year 1937, the respondents herein instituted proceedings in contempt against petitioners and others, alleging that they were guilty of having violated the injunctive provisions of the decree aforesaid. An affidavit was duly filed and attachment issued thereon, whereupon a motion to quash was made, and thereafter an amended affidavit and a second amended affidavit for attachment were filed, and a new attachment was issued and served. A motion to quash the second affidavit was filed, and by the court overruled, and a hearing was held, which continued for some five days, evidence being duly offered by both petitioners

and respondents. Thereupon the court took the matter under advisement, and a decision and judgment was finally filed. This decision, so far as material, reads as follows:

" . . . It only becomes necessary for the court to determine whether the respondents are guilty of contempt in having violated the terms of the decree of September 7, 1900. It must be conceded that said decree has long since become final, and as this proceeding is not to modify said decree, it only becomes necessary to determine whether its provisions are sufficiently specific and definite as to the measurement of the waters decreed to the users to be intelligible, so as to justify a punishment for contempt for a violation thereof. It cannot be gainsaid that under the decree the petitioners, as successors in interest to the original plaintiffs, have a first and paramount right to the waters of Clear Creek for the Pioneer ditch to the extent of 428 inches, plus 47 inches for the J. H. Wingfield farm on down the creek, or a total of 475 inches in all, before the respondents and others become entitled to any water.

"The court is not impressed with any of the following defenses urged by the respondents, viz.:

"(1) That the decree does not inure to the benefit of the successors in interest; or that petitioners are not in part such successors.

"(2) That the decreed water rights do not become appurtenant to the land upon which they are used.

"(3) Adverse use for a ten-year period by respondents, laches or the plea of estoppel.

"And all of such defenses are found unsupported by the evidence and are hereby expressly overruled.

" . . . Does the decree provide a definite and fixed method of measurement? If it does, that is all that the law would require. The court is of the opinion that this question must be answered in the affirmative. The method of measurement prescribed in the decree, according to the witness Goddard and others, has been used by the Pioneer ditch owners all down through the years, at least since the year 1907. . . .

"It should be remembered that the decree of 1900 was entered upon a written stipulation of the parties, and the stipulation prepared by able counsel, prescribes the method of measurement set forth in the decree.

" . . . It does appear from the evidence that all of the respondents were fully advised as to the terms of the decree of September 7, 1900, and they are therefore found guilty of a violation of the decree.

"The respondents may purge themselves of this contempt, and avoid a jail sentence which the law provides for, by hereafter strictly adhering to the terms of the decree in question."

This decision became a judgment on the 21st of June, 1938. A motion for new trial was duly made and denied, and thereafter the application for writ of *certiorari* in the present case was filed.

■ *Certiorari* in Arizona is governed by sections 4391 and 4394, Revised Code of 1928, which read as follows:

"4391. *When granted and by whom issued.* The writ of *certiorari* may be granted by the supreme and superior courts, or by any judge thereof, in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy."

"4394. *Extent of review.* The review upon the writ shall not be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer."

It will be noted therefrom that, contrary to the rule obtaining in some other jurisdictions, the only question to be considered by the court to which the application is made is whether the inferior tribunal has exceeded its jurisdiction and the review on the writ shall not be extended further than to determine whether

such tribunal has regularly pursued its authority. *State ex rel. Andrews* v. *Superior Court,* 39 Ariz. 242, 5 Pac. (2d) 192.

 We have frequently had before us the question as to what is meant by "jurisdiction." "Jurisdiction" is of three kinds, (a) of the subject matter, (b) of the person, and (c) to render the particular judgment which was given. *City of Phoenix* v. *Greer,* 43 Ariz. 214, 29 Pac. (2d) 1062. In order that a judgment be proof against attack by *certiorari,* the inferior tribunal must have all three of these kinds of jurisdiction.

In the present case, it is of course the jurisdiction of the superior court of Yavapai county in the contempt proceedings that is directly attacked, but in order that we may ascertain whether it had jurisdiction as above stated, it is also necessary for us to review and consider the judgment of the territorial court in 1900, above referred to, for if the judgment in that case was void for want of jurisdiction, necessarily any contempt proceedings based thereon would also be void. We shall, therefore, first consider the judgment of the territorial court, and afterwards, if it becomes necessary, that of the superior court of Yavapai county.

 Does the record of the district court in 1900 show that the judgment rendered by it was made with jurisdiction? It is obvious that court had jurisdiction of the subject matter of the proceedings, to wit, the adjudication of water rights, and of the persons of the parties to such action. Nor, indeed, do we understand that the petitioners herein question that. Did it, however, have jurisdiction to render the particular judgment which it did? A judgment, in order to be valid, must of course be one which a court could legally render. This does not, however, mean that the fact that the court might have taken a mistaken view of the

evidence, or ruled erroneously on matters of law during the trial, shows that it did not have jurisdiction to render the particular judgment. It only means that the judgment was one which could have been legally rendered on the issues shown by the pleadings and the evidence. Tested by this yardstick, there can be no question that the judgment was of a nature not only permitted but required by the pleadings and the stipulation above referred to, for it does very formally adjudicate certain water rights to the parties, in accordance with the terms of the stipulation, and enjoin petitioners' predecessors in interest from using water in violation of such adjudication. We hold, therefore, that the judgment of the territorial court in 1900 was rendered with full jurisdiction.

 The proper proceeding for violation of a decree of the court which grants injunctive relief is, of course, an attachment for contempt, and in view of our very liberal statute on amendments, we see no reason why an affidavit for an attachment which is, in effect, the complaint upon which the proceedings are based, may not be amended in the same manner as any other pleading. The trial court proceeded to hear evidence, and found that the decree of 1900 inured to the benefit of the complainants in the contempt proceeding, and that the petitioners herein were successors in interest to the defendants; that the water rights adjudicated therein were appurtenant to the lands upon which they were used, and that the pleas of adverse use, laches and estoppel were not well founded. Since this proceeding is one in *certiorari,* we must assume that the court properly so found for, as we have said previously, *certiorari* raises only the question of the existence of jurisdiction, and not the erroneous exercise thereof. The particular issues just referred to not only could be, but should have been, determined by the superior court of Yavapai county in the con-

tempt proceeding, and we cannot consider herein whether they were properly determined or not. That would be a question to be raised only in some other manner.

The only matter raised by the present proceeding, which we think requires an extended discussion, is whether the judgment of the territorial court in 1900 was sufficiently definite and certain, so that the superior court of Yavapai county could determine whether it had been violated. Upon an examination of that judgment it will be seen that the parties stipulated that judgment should be entered in favor of the plaintiffs therein for 475 inches of water at all times of the year, and expressly provided how this water should be measured. The findings of the trial court followed precisely the stipulation both as to the amount and the manner in which it should be determined. The judgment, however, merely found the number of inches adjudicated, but did not expressly state how that amount should be determined.

It apparently is the contention of the petitioners herein that the word "inches," as appearing in the judgment, must be held to mean what is commonly, in Western America, called "miner's inches," and that the evidence at the contempt proceedings shows that plaintiffs all received, without interference from defendants, that amount of water, which is much less in quantity than "inches" of the character which petitioners in the contempt proceeding contended was awarded them by the decree. This is based on the claim that the pleadings in the case in 1900 referred to "miner's inches," and made no mention of any other kind of measurement of water, so that when the decree gives 475 "inches" of water to the plaintiffs in that case, it must be held to refer to "miner's inches." It is, of course, the general rule that the judgment rendered must be within the issues formed by the plead-

ings and that no greater relief can be given than is asked for in the pleadings. Counsel overlook, however, that the judgment of 1900 was a judgment by consent, and not one which was litigated to a conclusion. Such a judgment operates as a waiver of all defects or irregularities in the pleadings or other proceedings previous to the rendition of the judgment. *Spinetti* v. *Brignardello,* 53 Cal. 281; *Garf* v. *Weitzman,* 72 Colo. 136, 209 Pac. 809; *Dawson* v. *Kroning,* 68 Okl. 264, 173 Pac. 521; *Lessing* v. *Cunningham,* 55 Tex. 231. And the effect of a judgment entered upon a stipulation is the same as one rendered upon contest and trial. *Henderson* v. *Towle,* 23 Ariz. 377, 203 Pac. 1085. The stipulation is express as to the manner in which the inches of water adjudicated was to be measured. The findings of the court followed the stipulation, and we must assume that the judgment referred to the kind of inches set forth in the stipulation and findings. It clearly appears, therefore, that the manner in which the 475 inches of water was to be measured was by allowing it to flow through a flume 16 feet long, having a fall of 2 inches, with an aperture having an area of 475 inches and formed by a baffle board, and that plaintiffs were entitled to so much water as would come through that aperture with a head of four inches above the upper edge of the aperture. The method thus prescribed is the common method of measuring water in the west, the only variations usually found being in the slope of the measuring flume and the head of water above the aperture. The judgment was definite and certain as to the amount of water to which plaintiffs were entitled.

On *certiorari* we must assume that the court found from the evidence in the contempt proceeding that the respondents therein had violated the injunction of 1900 by diminishing the flow of plaintiffs' water below that to which they were entitled

by the decree, and such being the case, the judgment of the court finding the plaintiffs in contempt was made with full jurisdiction of the subject matter, the persons, and to render the particular judgment which it did. In passing we may say, however, that if it be true, as suggested by petitioners herein, that plaintiffs under the decree of 1900 are receiving far more water than is necessary to irrigate properly their lands, the petitioners have an ample remedy. An appropriation of water under our law does not give to the appropriator the ownership of the *corpus* of the water, but merely a right to use so much thereof, not exceeding the maximum which he has appropriated, as is necessary to irrigate properly the lands to which the appropriation is appurtenant. If, therefore, plaintiffs are using or wasting water in excess of the amount reasonably necessary to irrigate properly their lands, subsequent appropriators may, by a proper action, limit such use by the prior appropriator.

It appearing from the record that the superior court of Yavapai county did not exceed its jurisdiction in finding petitioners herein guilty of contempt, the motion to dismiss is granted.

ROSS, C. J., and McALISTER, J., concur.