230 P.2d 526

**FINDLAY et al. v. BOARD OF SUP'RS OF COUNTY OF MOHAVE et al.**

No. 5328.

Supreme Court of Arizona

April 23, 1951.

60

Charles P. Elmer, of Kingman, Favour & Quail, of Prescott, for appellants. T. J. Byrne, of Prescott, of Counsel.

Carl D. Hammond, of Kingman, Morgan & Locklear, of Phoenix, for appellees.

STANFORD, Justice.

This is an appeal from an order of the superior court quashing a writ of certiorari and dissolving the stay that had theretofore been ordered at the time the writ was issued. There was also made an order dismissing the petition upon which the writ had been granted.

The appellants (petitioners below) are four of the five practicing physicians in Mohave County. Located at Kingman, the county seat, is a county hospital known as the Mohave General Hospital, author-

ized, directed and maintained under the provisions of Chapter 17, Arts. III and IV, A.C.A.1939, relating to the powers of the board of supervisors in maintaining favorable health conditions. Incidentally, this was the only hospital in the county and widely used by the residents of the north westerly corner of the state. As a county hospital, it was completely under the control of the board of supervisors of Mohave County, who had provided a general manager therefor. On February 19, 1949, the respondent members of the board of supervisors passed a certain resolution or rule pertaining to the use of the facilities of the hospital by *any* doctor. This resolution, known as Resolution 111, is as follows: "Resolved, That if any doctor using Mohave General Hospital facilities is requested by another doctor, using such facilities, to assist him professionally and that doctor refuses or fails to give such assistance, then such doctor shall not be allowed to use said hospital facilities thereafter, except only for his patients in the hospital at that time."

On February 26, 1949, petitioner Barnes was notified by respondent Coppa, manager of the hospital, that he would no longer be allowed the use of the hospital, with the exception of the patients which he was then treating in the hospital. He was later notified that authority for this action had been obtained from the respondent board and was the result of an alleged violation of Resolution 111, supra.

In August of 1949, the three remaining petitioners received similar notifications and were also prohibited from further use of the hospital facilities. No charges were preferred and no hearing was given petitioners prior to the notifications. A statement was added at the bottom of each notice that petitioners could request a hearing if they so desired.

On August 31, 1949, petitioners filed their petition for writ of certiorari in the superior court of Mohave County, the Honorable J. W. Faulkner presiding. It was thereupon ordered that the writ issue and the respondents were commanded to certify and return the complete transcript of the record and proceedings held regarding the above-mentioned notifications which petitioners had received. All proceedings, subsequent to the issue of the writ were heard and determined by the Honorable H. L. Russell.

There was also incorporated in the writ a stay requiring the parties in the meantime to desist from further proceedings in the matter to be reviewed. The purpose of the writ was to secure a review of the actions of the board of supervisors. The petition for the writ alleged: (1) that the board had exceeded its jurisdiction in finding the respondents guilty of violating the resolution without notice and without trial; (2) that the board had exceeded its jurisdiction in denying the use of the hospital facilities to respondents; and (3) that the board had exceeded its jurisdiction in the

adoption of the resolution for the reason that the resolution was unconstitutional and void in that it was unjust, unreasonable and exceeded the discretionary powers of the board.

After the writ was issued, respondents filed their motion to quash, which was thereupon denied by the court. They then filed their response to the petition which contained a partial record of the proceedings before the board and also denied certain material contained in the petition for certiorari, further alleging that petitioners had requested no hearing after the notification of violation of Resolution 111 and termination of their use of hospital facilities. For further response, respondents also set out details concerning the alleged violation which were not contained in the record of proceedings of the board. In this regard, we note particularly that the only matter contained in the certified record, pertaining to the alleged violations, is a copy of the minutes of the said board, which states merely that Resolution 111 had been violated, no particulars being set forth. It is stated in the return that there was no transcript made of such proceedings.

The court, after taking the matter under advisement, issued its order dismissing the petition for writ of certiorari, quashing the writ theretofore issued and granting respondents their costs, which order was supported by the court's written findings of fact and conclusions of law, filed in pursuance of petitioners' request.

In the lower court, and here, respondents questioned the use of the writ of certiorari to challenge the constitutionality of the resolution. Their position in this behalf was, and is, that the writ of certiorari may not be used to review the actions of inferior tribunals, boards or officers in the exercise of legislative, executive or ministerial functions. We have heretofore ruled that the writ is confined to a review of judicial action, and then only to determine whether the inferior tribunal, board or officer has exceeded its jurisdiction or acted without jurisdiction. Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382. In State ex rel. Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192, it was held that certiorari issues only to test jurisdiction and not to determine whether it was erroneously exercised. The inferior court must have jurisdiction of the subject matter, person and power to render the particular judgment which was given in order that the judgment be proof against attack by certiorari. Wall v. Superior Court of Yavapai County, 53 Ariz. 344, 89 P.2d 624. In numerous other cases we have held that certiorari raises only the question of jurisdiction and not the erroneous exercise thereof. If the resolution in question is so unreasonable and so unjust as to be unconstitutional, then the board, in attempting to enforce it *was* without jurisdiction. The rights of these petitioners were materially and substantially affected by it as were the rights of their patients and of the residents of Mohave

County that had necessity for the use of the hospital's facilities and who might be admitted as paying patients. The principle of law laid down in the case of Mill v. Brown, 31 Utah 473, 88 P. 609, 611, is fittingly applicable in the instant case. The court in that case said: " * * * If the law be unconstitutional, then the acts of the respondent which affect the rights of the applicant have no support, and are, therefore, void and of no force or effect. This inquiry goes directly to the power—jurisdiction—of respondent to act, not to his qualification to do so, and hence can be inquired into in this proceeding. We cannot assent to the doctrine that a citizen affected by a law may not, at any time and in any judicial proceeding, attack that law as being unconstitutional and therefore void. An unconstitutional law by which it is sought to affect the rights of the citizen is of no force or effect and would not bind any one. Norton v. Shelby County, 118 U. S. 425–442, 6 S.Ct. 1121, 30 L.Ed. 178. Any act, therefore, of the respondent affecting the applicant's rights, if such act is based upon an unconstitutional law, is both without and beyond jurisdiction, and therefore void. The first objection cannot be sustained."

The board, in defending their actions, are relying upon their powers as conferred by law, pointing out that by the provisions of section 17–309, A.C.A.1939:

"The board of supervisors, under such limitations and restrictions as are prescribed by law, may:

* * * * * *

"5. Provide for the care and maintenance of the indigent, sick and the dependent poor of the county; erect and maintain homes and hospitals therefor; provide in their discretion a farm in connection with the county hospital, and make regulations for working the same;

* * * * * *

"17. Adopt provisions for the preservation of the health of their respective counties as necessary, and provide for the expenses thereof;

* * * * * *

"22. Do and perform all other acts and things necessary to the full discharge of the duties as the legislative authority of the county government; but a supervisor shall not vote upon any measure in which he, or any member of his family, or partner, may be pecuniarily interested;

"23. Make and enforce all local, police, sanitary and other regulations not in conflict with general laws;

* * * * * *"

They also direct attention to section 17–404, A.C.A.1939, which in part provides that: "Except in emergency cases when immediate hospitalization or medical care is necessary for the preservation of life or limb no person shall be provided hospitali-

64

zation or medical care hereunder without first filing with the board of supervisors * * * (indigent oath) * * *. The board of supervisors may admit into such hospital for hospital care, medical or surgical attention, any person other than an indigent who will pay, in part or in whole, for such hospital care, medical or surgical attention, under rules and regulations prescribed by said board. The admission of a paying patient shall not be to the inconvenience of any indigent patient."

In considering the reasonableness of the resolution under consideration we have taken into consideration the Code sections above referred to and that portion of section 17–349, A.C.A.1939, wherein it is expressly provided that " * * * Any person other than an indigent who has been admitted to the county hospital, may employ, without expense to the county, a physician or nurse who shall be permitted the necessary use of the hospital facilities and equipment. * * * " It is thus seen that a paying patient has a right to employ his own physician. Does this regulation impinge upon this privilege? If the rule is enforced the patient is restricted in whom he may employ, for the regulation provides that he may not employ a doctor who has not acceded to the regulation and agreed to assist any other doctor professionally, presumably in the hospital. In other words, the doctor, before he may prescribe for his patient, must first agree that he will aid and assist any other doctor

in the hospital; under what terms and conditions we do not know. Presumably, he might be required to assist without any assurance of being compensated for his services. He might be required to assist in an operation which in his honest judgment is unnecessary or should be deferred. Undoubtedly, any person worthy of the title of "Physician" or "Doctor of Medicine" would, in a case of emergency or many other situations, render professional aid and assistance to the best of his ability without thought of his obligations incurred under his Hippocratic Oath. Such is not the situation here. This regulation enforces his services not voluntarily contracted for or perhaps not desired by the patient, yet compulsorily enforced upon him. To enforce the rule would enslave him. It is of course axiomatic that licensed physicians have no constitutional right to practice their profession in a hospital maintained by state or political subdivision. Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714. It is likewise the general law that municipalities may regulate and control their hospitals and prescribe reasonable rules and regulations to be followed by physicians using the facilities. Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517; Selden v. City of Sterling, 316 Ill.App. 455, 45 N.E.2d 329. For the general rule, see cases cited, 41 C.J.S., Hospitals, § 5. Any public hospital having adopted reasonable rules and regulations governing the practice of medicine or

surgery cannot arbitrarily preclude a regularly licensed physician or surgeon the right to practice in such hospital, so long as such surgeon or physician stays within the law. Henderson v. City of Knoxville, 157 Tenn. 477, 9 S.W.2d 697, 60 A.L.R. 652.

The provisions of section 17–349, supra, expressly confer upon a paying patient in a county hospital the privilege of employing a private physician without expense to the county, and such physician shall be permitted the necessary use of the hospital facilities and equipment. This express provision destroys any implication of a power to exclude physicians from the use of the county hospital except for a nonadherence to reasonable rules and regulations. We are without professional knowledge as to what might be encompassed within the definition of "reasonable rules and regulations". The managements of all modern hospitals require physicians and surgeons to keep thorough and clinical reports concerning their patients and their treatment, which become records of the hospital. Wards are provided for obstetrical cases; contagious cases and operative cases. Additional rules provide for numerous hygienic precautions. The reading of the cases indicates that hospitals have adopted rules denying the young and inexperienced surgeons the right to perform certain operations in the hospital except under the guidance or observation of an experienced practitioner. The rules and regulations just referred to all have reference to an orderly management of the hospital and in most instances are made for the protection of patients. Such rules and regulations appear to be reasonable and no doctor could be heard to complain for having to comply therewith. But the regulation under consideration goes beyond and transcends the ordinary and common-place regulations and invades the personal liberty and contractual rights of both the patient and the physician. To accede to the rule by what virtually amounts to compulsion would be repulsive and beneath the dignity of a professional man.

"* * * Physicians are not public servants who are bound to serve all who seek them, as are innkeepers, common carriers, and the like. * * *" 41 Am.Jur., Physicians and Surgeons, Sec. 4.

"A physician is under no obligation to engage in practice or to accept professional employment, but when the professional services of a physician are accepted by another person for the purpose of medical or surgical treatment, the relation of physician and patient is created. The relation is a consensual one wherein the patient knowingly seeks the assistance of the physician and the physician knowingly accepts him as a patient. * * *" 41 Am.Jur., Physicians and Surgeons, Sec. 71.

In view of the circumstances surrounding this case it is apparent that

petitioners had no plain, speedy and adequate remedy to protect their rights and to fulfill their obligations as physicians in the treatment of the private patients who might be regularly admitted as paying patients. Respondents suggest that a declaratory judgment and an appeal in the event of an adverse judgment would have afforded adequate relief. With this contention we cannot concur.

We therefore hold that the resolution was unconstitutional; that all action taken under it is and was of no effect. Having reached this conclusion, it is by way of anti-climax to point out that the resolution provided no method for review and that the action of the board in finding the petitioners guilty of violating the rule without accusation, notice or trial, finds no basis under our system of law requiring due process where substantial rights of citizens are infringed upon or destroyed.

The judgment quashing the writ and dissolving the stay is reversed, and the trial court is instructed to enter judgment reinstituting the desist order.

Judgment reversed.

UDALL, C. J., and LA PRADE, J., concur.

PHELPS and DE CONCINI, Justices (specially concurring).

We concur in the result reached in this case to the effect that the judgment of the trial court quashing the writ of certiorari and dissolving the stay must be reversed but we heartily disagree with the ground assigned in the majority opinion for its reversal, to wit, that the resolution passed by the board of supervisors is unconstitutional.

The ground upon which the judgment of the lower court should be reversed, in our opinion, is that in the finding of the board: that the appellants had violated resolution No. 111 previously passed by it; and in its order prohibiting appellants from further use of the facilities of the county hospital the board was in the exercise of a judicial function. It was therefore without jurisdiction to render the judgment complained of until it had given appellants an opportunity to be heard and had presented to it evidence sustaining the finding that appellants refused to assist the county doctor professionally in the treatment of patients or in the performance of operations upon patients confined in the county hospital.

Let us pause here to observe that the word *professionally* has no such connotation as indicated by the majority opinion. It would not only not be professional but it would be highly unprofessional for a physician to assist in the performance of an operation which he believed to be unnecessary or unwise to perform at that time.

As we view the matter there is no basis whatever for holding that resolution No. 111 is unconstitutional. No provision of

the constitution is involved and no effort has been made to point to any specific provision thereof which the resolution violates.

All of the powers of the board of supervisors were granted to it by the legislature and it has only such powers as have been expressly, or by necessary implication, delegated to it. Section 17–309(5), A.C.A.1939, relating to the construction and maintenance of hospitals for the indigent sick and the dependent poor is set out in full in the majority opinion. Section 17–348, A.C.A. 1939, provides: "No person other than an indigent shall receive public aid, or be admitted into any home or hospital the expenses of which are paid by the county, and any contractor or person having charge of any such home or hospital who knowingly receives into the same, for medical attention or subsistence, any person other than an indigent, shall be guilty of a misdemeanor. The board may admit into such hospital for hospital care, medical or surgical attention, any person other than an indigent who will pay, in part or in whole, for such hospital care, medical and surgical attention, *under rules and regulations prescribed by the board."* (Emphasis supplied.)

The material portions of section 17–404, A.C.A.1939, are set out in the majority opinion and will not be here repeated. This section contains at the end thereof identically the same language as section 17–348, supra, relative to the admission to the hospital of persons other than indigent patients and reiterates the power of the board to adopt rules and regulations governing their admission and treatment. Section 17–349 provides in part as follows: " * * * Any person other than an indigent who has been admitted to the county hospital, may employ, without expense to the county, a physician or nurse who shall be permitted the necessary use of the hospital facilities and equipment. The admission of a paying patient shall not be to the inconvenience of any indigent patient and an indigent patient shall receive the same care and treatment accorded to pay patients."

We believe all of the members of the court agree that in adopting resolution No. 111 the board of supervisors was acting in a legislative capacity. This being true we are neither concerned nor have we the authority to question either the reasonableness or the wisdom of the board in adopting it. These matters rest exclusively with the board. The authority of this court is limited solely to the determination of the question of whether the board in passing resolution No. 111 acted within the power and jurisdiction vested in it by the provisions of law above quoted. We think it did.

The board of supervisors is charged by the above law with the duty of providing for the care and maintenance of the indigent sick and the dependent poor of Mohave County and were empowered to build and maintain a hospital for that purpose. The power to maintain carries with it by

implication the power to supervise and control it. The hospital is the property of Mohave County. Except in emergency cases when immediate hospitalization or medical care is necessary for the preservation of life or limb no person is allowed to be admitted to such hospital without first applying to the board of supervisors for such admission and is is made a misdemeanor for any person in charge of the hospital to admit a person for hospital care, medical attention and subsistence without the consent of the board. Sections 17–348 and 17–404, supra, provide that the board may admit paying patients *under rules and regulations prescribed by it*. The language used in these sections amounts to an express grant of power to adopt rules and regulations governing the admission of paying patients.

A public hospital operated by the county has none of the characteristics of a public service corporation and is not bound to accept for treatment anyone who applies therefor. The statute expressly gives to the board the power to reject paying patients. In our view of the matter the clause "may admit into such hospital" is purely permissive and when considered together with the entire act cannot under any circumstances be construed to mean "must admit * * *".

Resolution No. 111 was adopted in accordance with and in the light of the above statute. Provision is made in said resolution for appellants to use the facilities of the hospital for any patient they then had in the hospital. The board has the right as above stated to refuse to admit to the hospital for treatment any and all patients other than indigent.

Upon what right then does the claim of appellants to the use of the hospital and its equipment rest? They have no property right in the hospital or in its equipment or its facilities. The right to practice medicine is not a property right. Appellants are merely licensees as medical practitioners and their licenses may be revoked at any time for cause. Therefore they cannot claim that any property right of theirs has been taken from them, in denying to them the use of the hospital facilities. The mere fact that they are licensed to practice medicine in the state and are engaged in the practice thereof in Mohave County does not of itself give them any legal right to arbitrarily use the county hospital and its facilities in the furtherance of their practice. It cannot logically be said therefore that the regulation adopted by the board violated any legal rights of appellants. The board in adopting such regulation was acting within the express powers granted it by the legislature.

For this court to hold that the board may not adopt regulation No. 111 relating to the proper conduct and control of the county hospital for the purposes for which it was built and is maintained amounts to a mandate that the board of supervisors must ab-

dicate its powers and authority to manage and control the hospital property of Mohave County, and by judicial fiat turns its management and control over to appellants including the power to dictate the appointment of the county physician of that county. It amounts to the taking of property without due process of law in violation of both the state and Federal Constitution.