BOARD OF TRUSTEES OF THE MEMORIAL HOS-
PITAL OF SHERIDAN COUNTY,

*Plaintiff and Respondent,*

vs.

JOHN R. PRATT, M. D.,

*Defendant and Appellant.*

(No. 2595; October 27th, 1953; 262 Pac. (2d) 682).

For the defendant and appellant the cause was submitted upon the brief of John F. Raper and R. G. Diefenderfer, both of Sheridan, Wyoming, and oral argument by Mr. Diefenderfer.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of H. Glenn Kinsley and Robert E. Holstedt, both of Sheridan, Wyoming.

124

## OPINION

BLUME, Chief Justice.

This is an action brought by the Board of Trustees

of the Memorial Hospital of Sheridan County against John R. Pratt a duly licensed physician and surgeon in this state. The question involved herein is as to whether or not the defendant shall be permitted to take his patients to the hospital and treat them therein if he fails and refused to comply with the regulations made by the Board of Trustees of the hospital. The particular regulations involved herein will be mentioned later. The facts which we deem to be the pertinent facts herein are as follows: Sections 26-701 to 26-707, W.C.S. 1945, provide for the organization and management of a memorial hospital. The statute provides that under certain circumstances, as set forth in the statute, it shall be the duty of the board of county commissioners to appoint a non-partisan board of trustees, none of which board shall be a medical doctor or a practitioner of the healing art, and which board shall consist of five competent and responsible citizens of the county, which board shall be organized and shall have control of the hospital and of its properties. It is provided that they shall file a certificate with the county clerk of the county and with the secretary of state. Upon the filing of such certificate said board of trustees shall automatically become a body corporate, with power to sue and be sued. The statute further provides that the board of county commissioners shall annually levy sufficient tax on all the taxable property in the county to provide for the maintenance of the hospital and the board of trustees shall expend the funds received from taxation in the careful maintenance of said hospital which shall be erected and maintained on lands, the title of which shall be in the county. Every county memorial hospital established and maintained under the provisions of this statute shall be kept and maintained as a public county hospital. The board of trustees shall have the right to charge persons able to pay for the

services and for use of its facilities and shall furnish free medical hospitalization to such persons who have no means to pay for the same. It is made the duty of the board of trustees to keep a careful record of all of its doings and of all its expenditures and furnish same to the board of county commissioners and make a complete report of its doings each year.

The plaintiff in this case is the duly constituted Board of Trustees of the Memorial Hospital of Sheridan County as above mentioned. It adopted rules and regulations in connection with the management of the hospital. The board appoints a medical staff upon application of the respective physicians. All appointments to the medical staff are made for one calendar year and renewable from year to year. As a matter of practice, all physicians in Sheridan County, except those belonging to the courtesy division, belong to the medical staff and have the right to use the facilities of the Memorial Hospital. The converse also appears to be substantially true, namely that all physicians who have the right to use the facilities of the hospital are members of the medical staff, except those who use the hospital by courtesy only. By the rules of the board, the medical staff is directed to adopt by-laws and rules subject to the approval of the board of trustees. The board may suspend the privileges of a member of the medical staff for violating the rules and regulations in reference thereto. But a credentials committee of the medical staff shall first make a report to the board and thereafter an opportunity is afforded the member of the medical staff to be heard as to whether or not he should be suspended.

On August 12, 1949, the medical staff adopted rules approved by the board of trustees which are in controversy herein as follows:

"7.   THE ATTENDING PHYSICIAN SHALL BE HELD RESPONSIBLE FOR THE PREPARATION OF A COMPLETE MEDICAL RECORD FOR EACH PATIENT. This record shall include identification; date; complaint; personal history; family history; history of present illness; physical examination; special reports such as consultation, clinical laboratory, x-ray, and others; provisional diagnosis; medical or surgical treatment; pathological findings; progress notes, final diagnosis, condition on discharge; follow-up; and autopsy report when available. The operative record shall be completed within twenty-four hours after operation. No medical record shall be filed until it is complete, except on order of the Medical Records Committee.

"8.   A complete history and physical examination shall in all cases be written within twenty-four hours after admission of the patient.

"17.   Patients shall be discharged only on written order of the attending physician. At the time of discharge the attending physician shall see that the record is complete, state his final diagnosis, and sign the record. RECORDS MUST BE COMPLETED WITHIN ONE WEEK AFTER THE DISMISSAL OF THE PATIENT."

The records to be kept, the blank forms of which are in the record before us, are:

1.   Record of Personal History and Physical Examination.

2.   Record of Operation and Anesthesia.

3.   Requisition and Report in Connection with X-ray.

4.   Progress Notes.

5.  Physician's Order Sheet.

6.  Pregnancy and Labor Record.

As to whether or not the records are properly made is, according to the testimony of Charlotte Sell, registered medical record librarian, determined as follows: "Q. Who is the final judge of the completeness of the records? A. I'd have to answer that in two parts because if the record comes to me and, as I stated before, that if the diagnosis and the history and physical and all the other pertinent things have been put in and it seems as though it is complete, it is not turned back; I simply keep it in the file. If there is any question whatsoever then I turn it back to the attending physical and if I receive it the same way as I gave it to him then I turn it over to the Record Room Committee." The record room committee seems to be a committee of the physicans who examine as to whether or not the records have been made according to requirements and regulations.

It appears herein that during the year 1951 a very large number of reports which were to be made by Dr. Pratt were not properly made. In January 1952, sixty-five of these reports were delinquent, which number, however, was cut down to thirteen in March 1952. On December 15, 1951, the chairman of the credentials committee recommended to the board of trustees, plaintiff herein, that Dr. Pratt not be reappointed as a member of the medical staff unless he brought his records up to date to the satisfaction of the records committee. The board of trustees accordingly in January 1952, did not reappoint the defendant as a member of the medical staff for the year 1952, but gave him an opportunity to be heard, serving notice upon him to appear before the board. That hearing was finally held on March 1, 1952, at which the defendant and his counsel were present. In view of the fact that the de-

fendant had not then complied with the rules and regulations in accordance with making the reports, the board reaffirmed its action of January 1952, and refused to make him a member of the staff. But instead of enforcing its orders, it brought the present action herewith which was filed on March 6, 1952, in which the facts of delinquency of the defendant with reference to his reports were set out and wherein the plaintiff prayed for declaratory judgment and decree to the effect that the rules and regulations adopted by the board of trustees and the medical staff are reasonable rules and regulations in so far as they applied to the defendant in this case, and that the defendant, in case he continued to refuse to comply with these rules and regulations, should be declared to forfeit his right to continue to make use of the facilities of the hospital and be permanently enjoined from making use of such facilities in case of continued refusal to comply with these regulations.

The court entered its judgment and decree in this case on October 6, 1952, wherein the court found the fact that the defendant was delinquent in filling out his reports in connection with his patients; that the board has power to make reasonable rules and regulations and that the rules hereinbefore set out (rules 7, 8 and 17) are reasonable rules; and the court in part decreed as follows:

"(3) That upon the Defendant's failure and refusal to comply with the said rules and regulations and to prepare and complete medical records for patients admitted to said Hospital under his name as attending physician, as established by the evidence in this case, the Plaintiff Board had and has the authority to deny to the Defendant, appointment to the medical staff of the Hospital and to deny him the privileges of a Staff

member and to deny to him, the use of the facilities of said Hospital for treatment of patients admitted thereto under his name as attending physician.

"(4) That the Defendant be and is hereby granted additional time to and including November 15, 1952, within which to prepare and complete the medical records for patients heretofore admitted to said Hospital for care and treatment under his name as attending physician and for those patients hereafter so admitted, including the month of October, 1952, insofar as such records are due and required by said Rules and Regulations.

"(5) That is case of the failure or refusal of the Defendant to comply with said Rules and Regulations and to prepare and complete medical records for the patients admitted to said Hospital under his name as attending physician, as required by said Rules and Regulations and as required by this Decree, on or before November 15, 1952, that the Defendant be then restrained and enjoined from making further use of the facilities of the Hospital for the treatment and care of patients admitted to said Hospital under his name as attending physician, except as to patients which he may then be treating in said Hospital and except as otherwise permitted by the Plaintiff Board."

From the judgment and decree the court so entered, the defendant has appealed to this court. Some other facts will be noted in connection with the discussion of the rules and regulations in question herein.

A number of errors are assigned herein. Some of them are not argued; some of them are of no importance herein. And it would seem that the arguments for the appellant which are worthy of discussion herein are three in number, namely, that the statute creating

the hospital in question is unconstitutional; that there is an unlawful delegation of authority to the board of trustees and that the rules and regulations made by the board of trustees are unreasonable.

1. Constitutionality of the Statute.

Counsel points out the fact that the hospital itself is owned by the County of Sheridan and that the county levies a tax in support of the hospital and they assert that the board of trustees created under the act is a special commission to whom certain powers are delegated, and that such delegation of power is in violation of Art. 3, § 37 of our constitution which states as follows: "The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal functions whatever." This section seems to refer exclusively to municipal functions unless it be the matter of taxation, a point not involved herein.

Counsel for appellant argue that the board of trustees appointed under the statute is clearly a commission to perform municipal functions. They rely upon the case of Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P. (2d) 355, involving a water board which under the statute was not strictly under the control of the municipal council, and we held to that extent it constituted a commission in violation of the constitutional provisions just quoted. The case is not in point. It involved a municipal function as generally understood. The case at bar does not, even admitting (without deciding) that a county should be likened to a municipality. The creation and existence of the hospital is, strictly speaking in any event, not a municipal function. It is rather a matter of statewide concern, and under the

exclusive control of the legislature, so that the latter may make such provisions with reference thereto as it deems advisable.

In City of Ecorse v. Peoples Community Hospital Authority, 336 Mich. 490, 58 N.W. (2d) 159, 164, 165, the legislature created a hospital authority similar to the corporation created in the legislative act in question here, and the court said in that case: "Undeniably, health is a matter of State concern. Davock v. Moore, 105 Mich. 120, 132, 63 N.W. 424, 28 L.R.A. 783. In safeguarding the public health, the legislature is granted a large area of discretion as to the measures to be used, it being no longer questioned that the State may interfere directly or indirectly by any of its agencies whenever the public interest demands it. * * * We have here a matter of health, which is a question of state-wide concern and in which the legislature has a large area of discretion. The defendant authority is a State agency, and as such is not a municipal corporation or a body created by the municipalities here involved but by the State itself." In the case of Battle v. Willcox, 128 S. C. 500, 122 S.E. 516, it was held that a township may be authorized to erect and operate a hospital under the management of a specially created commission. Substantially the same was held as to a county in the case of McLure v. McElroy, 211 S. C. 106, 44 S.E. (2d) 101. The court in that case held that the collection and assessment of taxes by the county board was merely in a ministerial capacity. The fact that the statute in question provides for the appointment of the members of the board of trustees by the county commissioners is not, we think, of any importance. It is stated in 41 C.J.S. § 9, p. 351: "The manner of selecting officers or persons in charge of public hospitals is within the discretion of the legislature. The legislature may provide for their election, or the power of

appointment may be vested in certain authorities, such as, for instance, the governor, the fiscal court, or a board of trustees. * * * Under some statutes providing for the establishment and operation of a public hospital the entire control and management of the hospital is vested in its trustees."

In State of Ohio v. Davis, 23 Ohio State 434, 444, involving a city hospital, the court stated as follows: "We deem it unnecessary to trace the history of the legislation under which the hospital was originally established and has since been enlarged and maintained. Nor is it material whether the state contributed funds toward its erection, or whether it was built and is supported wholly from local taxation. There is no necessary connection between the instrumentalities which the legislature may put in operation to raise, by taxation, the necessary funds to found and support an institution for public purposes, and those which it may see proper to employ as its governing body. It seems to be supposed in the argument for the relator, that because the title to the property is vested in the city of Cincinnati, and the hospital has been built and is maintained under the corporate authority of the city, it therefore follows that the governing body must act under like corporate authority. But such result by no means follows. It is left to the wisdom of the legislature to determine and prescribe through what officers or agencies the hospital is to be governed, * * *." In view of these authorities, it would seem to be clear that the instant contention of counsel for appellant here must be overruled.

## 2. Delegation of Power.

It is the contention of counsel for appellant that the statute delegating powers to the board of trustees is unconstitutional and in violation of Article 3, Section 1,

of our constitution which reads: "The legislative power shall be vested in a senate and house of representatives, which shall be designated 'The Legislature of the State of Wyoming.' " Counsel for appellant evidently consider that the making of the rules and regulations by the board of trustees in this case is legislative in character. Counsel for plaintiff, however say that: "The making of reasonable rules and regulations for the management and operation of a hospital in the interest of the public health is not a legislative matter but only a means to the orderly administration of an administrative agency." Stason on Cases and Other Materials on Administrative Tribunals (1937) states on page 43 that: "It is indeed difficult in theory and impossible in practice to draw a precise dividing line between the legislative on the one hand and the purely administrative on the other; administrative action so often partakes of both legislative and executive characteristics." On page 42 he states: "* * * we have thought it convenient in this Report to use the one word 'regulations' to describe the subordinate legislation which results from delegation, whatever form it may take, or however many names it may in fact have received hitherto." In Findlay v. Board of Sup'rs of County of Mohave, 72 Ariz. 58, 230 P. (2d) 526, 24 A.L.R. (2d) 841, it is stated in the minority opinion that all the members of the court considered the regulation to exclude a physician from a public hospital as having been adopted in a legislative capacity. And we are inclined to believe that that is probably true in the case at bar. That, however, is not determinative of the question before us. It is true that, generally speaking, the legislature cannot delegate its legislative authority. 16 C.J.S. 337, § 133. However, the constitutional provision relied upon by counsel for the appellant is not operative in all cases. If it were, municipal corpora-

tions would not be able to adopt any ordinances which are clearly legislative in character. In Cooley's Constitutional Limitations, 8th Ed. Vol. 1, p. 235, the author states that municipal corporations are exempted from the constitutional provision above mentioned by reason of the immemorial practice of municipal corporations to adopt ordinances of various kinds. And there are exceptions other than that relating to municipal corporations. Thus it is stated in 16 C.J.S. 399, § 140, as follows: "The general doctrine prohibiting the delegation of legislative powers has no application to the vesting of such powers in political subdivisions created for the purpose of local government. In the absence of constitutional inhibitions, the legislature may delegate to appropriate local governmental agencies authority to legislate with regard to local affairs, to frame and enforce such by-laws, ordinances, and regulations, as are incident to local self-government, and to carry out certain functions which, although limited in their scope, are, in their performance, an exercise of sovereignty." I n11 Am. Jur. 934, § 223, it is stated: "For a great variety of purposes and governmental functions the legislature may delegate a part of its power over local subjects to municipal corporations, county boards, and other public bodies within the legislative classification of departments." In Maricopa Co. Municipal W. C. Dist. No. 1 v. LaPrade, 45 Ariz. 61, 40 P. (2d) 94, 99, the court stated: "The next objection is that the act contains a number of instances of illegally delegated authority. It is universally held that the Legislature cannot delegate its power of general legislation to any individual, or group of individuals, however organized. * * * But it is also held that legislative power of a purely local nature may be delegated to political subdivisions created for the purpose of local self-government." In re Opinion of the

Justices, 78 N. H. 617, 100 A. 49, 51, the court stated: "The non-delegable character of the lawmaking power vested in the Legislature is subject to the exception that limited powers of local legislation may be conferred upon minor subdivisions of the state." While some of the cases speak of "political subdivisions", they are not intended, we think, to use that term technically and as excluding a corporation such as involved herein. In Wallace v. Feehan, 206 Ind. 522, 190 N.E. 438, 442, 443, the court, quoting from a previous case, stated as follows: " 'It is true, beyond controversy, that the legislative department of the state, wherein the constitution has lodged all legislative authority, will not be permitted to relieve itself of this power by the delegation thereof. It cannot confer on any body or person the power to determine what the law shall be, as that power is one which only the legislature, under our constitution, is authorized to exercise; but this constitutional inhibition cannot properly be extended so as to prevent the grant of legislative authority to some administrative board or other tribunal to adopt rules, by-laws, or ordinances for its government, or to carry out a particular purpose. * * * That the power granted to administrative boards, of the nature of boards of health, etc., to adopt rules, by-laws, and regulations reasonably adapted to carry out the purpose or object for which they are created, is not an improper delegation of authority, within the meaning of the constitutional inhibition in controversy, is no longer an open question, and is well settled by a long line of authorities. * * * While it is true that the character or nature of such boards is administrative only, still the powers conferred upon them by the legislature, in view of the great public interest confided to them, have always received from the courts a liberal construction; and the right of the legislature to confer upon them

the power to make reasonable rules, by-laws, and regulations is generally recognized by the authorities. Parker & W. Pub. Health, § 79; 4 Am. & Eng. Enc. Law, 597; Lake Erie, etc., R. Co. v. James, 10 Ind. App. 550, 35 N.E. 395, 38 N.E. 192.' "

The statute in question here does not by express words confer the power on the board to adopt rules and regulations and if it has the power to do so, it must be implied. That point has given us some concern. Counsel for appellant have not pressed that point, but say that the county, if anyone, should have made the rules. There is no merit in that, since the management of the hospital is in the hands of the board, and the county, as such, plays but a minor part in that connection. See Phinney v. Montgomery, 218 Iowa 1240, 257 N.W. 208. The board of trustees exists as a corporate entity, public in its nature. Speaking of private corporations, it is stated in 18 C.J.S. 596, § 186: "Although ordinarily a corporation's charter or the general law expressly confers the power to enact or adopt by-laws, this is unnecessary, for, by the principles of the common law, every corporation aggregate possesses the inherent power, subject to restrictions in its charter, articles, or certificate of incorporation, to make all necessary and legal by-laws, rules, and regulations for its government and operation, although such power may not be expressly conferred in its charter, in the statute of its creation, or in any other statute. It is regarded as a continuous power that is included in the grant of the capacity of being a corporation, and as an incident to corporate existence." Speaking of a public corporation namely municipalities, McQuillin on Municipal Corporations, 3rd Ed., Vol. 5, § 16.06 states: "The ordinance-making power may exist by express provision of charter or statute, or it may exist by implication as necessary or essential, not simply desirable or con-

venient, to enable the municipality to carry out powers expressly granted to it or to enable it to accomplish its declared objects and purposes. Indeed, the very creation of a corporation has been said to carry with it power to make by-laws which are reasonable and not contrary to general law; this has been recognized by English courts since an early date."

It has been quite frequently laid down as a general rule that a hospital board may prescribe reasonable rules and regulations to be followed by physicians using the hospital facilities. 41 C.J.S. 336, § 5; 30 C.J. 464, Annotation 24 A.L.R. (2d) 852 and 855; Green v. City of St. Petersburg, 154 Fla. 339, 17 So. (2d) 517; Selden v. City of Sterling, 316 Ill. App. 455, 45 N.E. (2d) 329; Henderson v. City of Knoxville, 157 Tenn. 477, 9 S.W. (2d) 697, 60 A.L.R. 652; Bryant v. City of Lakeland, 158 Fla. 151, 28 So. (2d) 106; Jacobs v. Martin, 20 N.J. Super, 531, 90 A. (2d) 151 and numerous cases cited. In Green v. City of St. Petersburg, supra, the court held that rules may be made to standardize the hospital so as to conform to the requirements of the American Medical Association and the American College of Surgeons—a situation that exactly fits the case at bar. In fact we have found no case in which the right to make such reasonable rules and regulations on the part of the governing board of the hospital has been denied. In most cases the statutes providing for hospitals expressly contain provisions authorizing the governing board of the hospital to make reasonable rules and regulations. In two cases, however, which we have found, there does not seem to have been any express authority granted by the legislature and yet the governing board was held to have the power to make reasonable rules and regulations excluding physicians under certain conditions from practicing in the hospital in question. These cases are Bryant v. City of Lake-

land, 158 Fla. 151, 28 So. (2d) 106 and Newton v. Board of Commissioners, 86 Colo. 446, 282 P. 1068.

The statute in question in this case constitutes the board of trustees as a body corporate with the power to sue and to be sued. Furthermore, the statute expressly provides that the management and control of the hospital in question shall be vested in the board of trustees of the hospital. The appellant in this case, when he made an application to become a member of the medical staff, expressly agreed that he would comply with all rules or regulations then or thereafter made by the hospital in question. Hence, we have concluded that the board of trustees had the power to make reasonable rules and regulations defining the conditions under which physicians might avail themselves of the facilities of the hospital.

3. Reasonableness of the Rules.

The rules involved here were adopted, according to the testimony before us, in order to standardize the Sheridan County Hospital as recommended by the American Hospital Association, the American Medical Association and the American College of Surgeons. Dr. Whedon, who had practiced medicine for a period of forty-six years, testified that the rules and regulations in question here are reasonable. The defendant in this case was the only doctor who testified in his behalf. He stated: "I object only to the manner in which they (the records) are required." Again he stated, referring to the blank forms concerning personal history: "I don't object to filling it out. I object to filling it out in a prescribed, stereotyped manner. I want to fill it out my way." We do not know what the doctor meant.

An annotation on the subject as to exclusion of physicians from public and private hospitals for viola-

tion of certain rules and regulations adopted by the hospital is contained in 24 A.L.R. (2d) commencing with page 851. See also the later cases of Jacobs v. Martin, 20 N. J. Super. 468, 90 A. (2d) 150, and Stribling v. Jolley, Mo. App., 253 S.W. (2d) 519. Only one of the cases cited deals with non-compliance with the regulations as to keeping records of patients. That is the case of Bryant v. City of Lakeland, supra. In that case the exclusion from the hospital by reason of the violation of such a rule was sustained. But what was required in the keeping of records does not appear. In Findlay v. Board of Sup'rs. of County of Mohave, supra, while the point was not directly involved, the court said, at p. 531: "The managements of all modern hospitals require physicians and surgeons to keep thorough and clinical reports concerning their patients and their treatment, which become records of the hospital. * * * The rules and regulations just referred to all have reference to an orderly management of the hospital and in most instances are made for the protection of patients. Such rules and regulations appear to be reasonable and no doctor could be heard to complain for having to comply therewith." This quotation is directly in point herein. The only real objection made herein by the defendant is in reference to completing the blank giving the personal history of the patients. One objection made is that it is required to be filled out within twenty-four hours after a patient enters the hospital. It may be that that is rather a short time, but if other physicians can fill in this blank within that time there does not seem to be any reason why the defendant in this case should be excepted from the rule. Another complaint is that it divulges secrets which ought not to be divulged under the Hippocratic Oath which the defendant says he has taken. That oath states among other things: "Whatever in connection with my professional practice, or not in connec-

tion with it, I may see or hear in the lives of men which ought not to be spoken abroad, I will not divulge, as reckoning that all such should be kept secret." That of course is a laudable requirement when a physician treats a patient in his office. A different question arises when he takes his patient to a public hospital. We have examined the particular form to which defendant objects. It requires a statement as to age, sex, race, occupation, temperature, height, weight, diseases from childhood to date, chief complaints of the patient, physical findings by physician, age of father, mother, brothers and sisters and any hereditary or infectious diseases which they might have had and their health if living or the cause of their death.

We may well paraphrase what the court said in Findlay v. Board of Sup'rs. of County of Mohave, supra, that "we are without professional knowledge as to what might be encompassed within the definition of 'reasonable rules and regulations'". The evidence shows that the rules in question here are reasonable. The judgment of the trial court on that point is accordingly sustained by substantial evidence, and under the repeated holding of this court we cannot be justified in reversing it. The judgment of the district court is accordingly affirmed, but in view of the fact that an appeal has been taken herein and which has been done on reasonable grounds, we think that the time given defendant to November 15, 1952, to bring his records up to date, should be and is hereby extended to December 1, 1953. In all other respects the judgment is affirmed.

*Affirmed.*

RINER, J. and HARNSBERGER, J. concur.