Harry Fishwick et al., Appellees, v. John L. Lewis, Appellant.

Gen. No. 8,426.

Heard in this court at the April term, 1930. Opinion filed June 21, 1930.

Henry Warrum, Charles E. Feirich, Moses Pulverman and Gillespie, Burke & Gillespie, for appellant.

A. C. Lewis, Floyd E. Thompson, Joseph A. Londrigan and Roy C. Martin, for appellees.

Mr. Justice Niehaus delivered the opinion of the court.

In this case, an appeal is prosecuted by John L. Lewis, president of the United Mine Workers of America, from the order of the circuit court of Sangamon county denying a motion to dissolve a temporary injunction based upon the allegations of a bill in equity filed by Harry Fishwick, president of the 12th District of the United Mine Workers of America, and others, to restrain the appellant John L. Lewis and the officers and representatives of the United Mine workers of America from revoking or attempting to revoke, or carrying into execution any order purporting to revoke the charter of District No. 12; and from deposing and suspending or removing from office or claiming that they have deposed or removed from office any of the complainants in the bill referred to; and from interfering with the performance of the duties of the officers of District No. 12; and from setting up or attempting to set up a provisional government for said district.

The only question involved in the appeal is the legal propriety of the order denying appellant's motion to dissolve the temporary injunction. In review of the case we shall confine ourselves to a consideration of the questions that have a direct bearing upon matter appealed from.

The material facts pertaining to this controversy as summarized in the decision of the chancellor who passed upon the motion to dissolve the injunction and as they are set forth in the abstract, are as follows:

"The United Mine Workers of America is a voluntary unincorporated labor organization among workmen in and around the coal mines on the American continent and is international in its scope. Its jurisdiction is divided into districts, subdistricts and local unions. At intervals, since 1890, it has adopted written constitutions for its government. The last one was adopted in January, 1927, and expressly provided

(sec. 13, art. XX) that it shall be in effect until March 31, 1929, and can be amended only by a majority vote of the delegates attending the regular international convention. Under the constitution international conventions are to be held biennially on the fourth Tuesday in January, and a regular convention was due in January, 1929. No such convention was held, but by the direction of the international executive board, a referendum vote of the membership of the United Mine Workers of America was taken through the local unions on the question of an indefinite postponement of the international convention. The result of the referendum vote showed that a majority had voted in favor of such postponement, although a substantial minority of the membership had voted against it.

"The 12th District of the United Mine Workers of America is a district chartered by the international organization with jurisdiction over the territorial area of the State of Illinois and with a membership confined to mine workers within that area. The district is, in turn, divided into subdistricts and local unions. Under the charter provisions, as well as under the constitutional provisions of the United Mine Workers of America, all districts, subdistricts and local unions are under the jurisdiction of the international union and subject to the laws and to the rulings of the international executive board. Districts have the power to enact such laws for their government as do not conflict with the laws or rulings of the international union or with any joint agreements. The charter of a district can be revoked only by the international president, whose action is subject to the approval of the international executive board.

"The principal offices provided by the international constitution are president, vice president and secretary-treasurer. An executive board is composed of

those officers, together with one member from each district. The defendant John L. Lewis, is president; Phillip Murray, vice president, and Thomas Kennedy, secretary-treasurer. Among the duties of the president is to preside over all international conventions and meetings of the international executive board, and to interpret the meaning of the international constitution, 'but his interpretation shall be subject to repeal by the international executive board.' The international constitution vests in the international president the power to suspend or remove for cause any international officer or appointive employee. But it does not impower or authorize him to remove or suspend a district or subdistrict official. When a charge against a district or subdistrict official is made, it must be lodged with the executive board of the branch of which the accused is an officer. The decision of such board is final, unless appealed from as provided in sec. 3 of art. III. An examination of the last-mentioned section will disclose that the right of appeal is granted only to individual members and to branches of the organization and that an appeal by an individual ends with the decision of the district executive board, while an appeal by a branch of the organization ends with the international executive board, except that, if the appeal of an individual member involves his membership, then successive appeals may be taken to the international convention.

"Under the charter powers granted District No. 12, it adopted a constitution for the government of the district, and provided for the election of president, vice president, secretary-treasurer and an executive board for the collection from its members of fees, dues, and other revenues, for the establishment and custody of funds for beneficent purposes, for the acquisition of property, the discipline of members, and the continuance of its constitution until modified or changed by

regular constitutional district conventions. The district comprises 10 subdistricts and more than 300 local unions with membership of approximately 50,000. It has acquired and owns a large office building in the City of Springfield, and loaned the international union $50,000. It claims to have advanced, at the request and for the use and benefit of the international union, divers other large sums of money, which are now due and payable. It has many thousands of dollars deposited in banks to its credit, and has entered into valuable and long-time leases of portions of its office buildings with tenants. It has an agreement of great advantage with various coal operators of Illinois with respect to wages and employment. It conducts a legal department at much expense for the assistance of miners, who have claims arising under the Workmen's Compensation Act. Subdistricts and local unions of District No. 12 have also acquired and hold property. On October 19, John L. Lewis, president of the international union, by an executive order issued at Indianapolis, Indiana, and addressed to Harry Fishwick, president, and all members of the executive board, District No. 12, United Mine Workers of America, purported to revoke the charter of said District No. 12. The order sets forth in detail the reasons for such revocation, and are in brief: (1) that the executive board of District No. 12 is insubordinate to the laws of the United Mine Workers of America, and the rulings of the international executive board; (2) that the executive board of District No. 12 refuses to execute the decision of the international executive board, declaring George Stouffer ineligible to be a member of the district executive board; (3) the district executive board reallocated the local unions in subdistrict No. 9 in defiance of the ruling of the international executive board; (4) through its official publication, The Illinois Miner, the district board has circulated

among the membership, misrepresentations, untruths, and slander concerning the international union; and (5) executive board has improperly used large sums of money to influence elections and for other improper purposes.

"The executive order interpreted the effect of the revocation of the charter in the following language: 'This order revoking the charter of District No. 12 does not, in any manner affect the charters or status of the officers of the various subdistrict organizations now functioning within District No. 12, nor in any way affect the charter of local unions of mine workers in District No. 12. Said subdistricts and local unions will continue to function in their usual manner and retain as usual in their possession all moneys, real estate and other valuable property heretofore accumulated and in their possession. Concurrently with the revocation of the district charter, the international union is setting up a provisional district organization and appointing officers of said provisional district to take over the business of District No. 12, assume the obligations of the joint wage agreement, and its protection, and carry on in every particular the beneficent activities of a district union. Mr. Frank Hefferly of Collinsville, Illinois, has been appointed president of the Provisional District 12, United Mine Workers of America. Mr. Joseph P. Goett of Peoria, Illinois, has been appointed vice president of Provisional District 12, United Mine Workers of America. Mr. John T. Jones of West Frankfort, Illinois, has been appointed secretary-treasurer of Provisional District 12, United Mine Workers of America.

"The deposed officers and agents of District 12 will turn over to the designated officers of the provisional district the charter, books, records, seals, moneys, real estate and all other property in their possession belonging to District 12, United Mine Workers of

America. The provisional officers will furnish receipt for such property and retain it in their custody and possession for the use and protection of the membership of the local unions of Provisional District 12, United Mine Workers of America."

It is apparent from the facts herein set forth, and from the answer of the appellant Lewis to the bill of complaint, that the real purpose of the executive order issued by the appellant in revoking the charter of District 12, was not to put the district out of existence as a member of the United Mine Workers of America; but as stated in the answer, namely, that: "the sole and only effect of the revocation of the charter of said district is the revocation of the power vested in the executive officers and executive board of said district to administer the affairs thereof, and as incidental thereto, to remove the executive officers and the executive board of the district from the respective offices held by them; and to vest the powers of the executive officers and executive board of such district . . . in the provisional officers, as appointed by the international president."

This situation presents the question whether or not the appellant, as president of the United Mine Workers of America, acting under the constitution of that organization (assuming that the constitution was in force and effect at the time of the issuance of the order of revocation), had the power and the legal right, by means of a revocation of the charter of District No. 12, to remove the officers of District No. 12, and substitute therefor officers of his own selection, and whether he had the power by his executive order to cause the property real and personal held by the officers of District No. 12 as trustees for the benefit of the membership of the district, to be transferred into the custody and control of the officers and trustees selected and appointed by him.

From the facts recited, it is evident that a number of questions for final judicial determination are involved in this controversy, which not only concern the validity of the act of the appellant as president of the United Mine Workers of America, in revoking the charter of District No. 12 and removing the officers of the district and substituting the persons appointed by him in their places, but which also concern the validity of a revocation order which continues the district in existence without a charter as a functioning member of the United Mine Workers of America by an executive order. It is apparent also from the facts recited that there are property rights involved with reference to the real and personal property of District No. 12, which are held in trust by the officers of District 12, and which are affected by the executive order of removal of the officers of District No. 12. It is this feature of the controversy that brings this case into the jurisdiction of a court of equity. Courts of equity always take jurisdiction in a controversy of this character for the purpose of protecting property rights and the proper execution of any trust that may be involved. *Lord v. Equitable Life Assur. Soc.,* 194 N. Y. 212, 22 L. R. A. (N. S.) 420. If the act of the appellant is illegal it may involve serious consequences to property and property rights of District No. 12, and may result in irreparable loss to the district, and its membership.

A motion to dissolve a temporary injunction is not necessarily a hearing on the merits, but presents the question whether it is advisable to preserve the *status quo* of the matters in controversy by a continuance of the temporary injunction until a final hearing on the merits of the case. Whether the *status quo* should be preserved until the final hearing depends not only upon the probability that a case will be made out on a final hearing, but also upon the relative injury that

might be sustained by the parties by the action of the chancellor in granting or refusing the motion. *Barrell v. Lake Forest Water Co.*, 200 Ill. App. 529; *Russell v. Farley*, 105 U. S. 433; Kerr on Injunctions, 209, 210. Where the sole object for which the temporary injunction is sought is the preservation of a fund in controversy or the maintenance of the *status quo* until the question of the right between the parties can be decided on final hearing, the injunction is properly allowed or maintained even where there may be a serious doubt as to the ultimate success of the complaint. *Harriman v. Northern Securities Co.*, 132 Fed. 464. To the same effect is the holding in *City of Newton v. Levis*, 25 C. C. A. 161, 79 Fed. 715 and *Rago v. Village of Melrose Park*, 161 Ill. App. 18; *Young v. Federal Union Surety Co.*, 183 Ill. App. 278. In the latter case the court refers to *City of Newton v. Levis, supra,* and quotes the language of the court in deciding the principle which is here involved. The court said in that case: "The granting or withholding of a preliminary injunction rests in the sound judicial discretion of the court, and the only question presented by this appeal is whether or not the court below erred in the exercise of that discretion under the established legal principles which should have guided it. The propriety of his action must be considered from the standpoint of that court. . . . The controlling reason for the existence of the right to issue a preliminary injunction is that the court may thereby prevent such a change of the conditions and relations of persons and property during the litigation, as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, great and irreparable if the motion is denied. . . .

A preliminary injunction maintaining the *status quo* may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult and if the injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted.''

For the reasons stated, we conclude that under the facts and the law pertaining to this controversy, it was important and advisable that the *status quo* of the matters involved in the litigation should be preserved until the final hearing; and for that reason alone and without regard to any other, it was incumbent on the court to overrule the motion to dissolve the temporary injunction; and the order overruling the appellant's motion to dissolve the injunction is therefore affirmed.

*Affirmed.*