Bryant R. Selden, Appellant, v. City of Sterling, Illinois, et al., Appellees.

Gen. No. 9,795.

456

Heard in this court at the May term, 1942. Opinion filed September 17, 1942. Opinion subsequently modified and rehearing denied December 23, 1942.

ROBERT W. BESSE and KENNARD J. BESSE, both of Sterling, for appellant.

J. J. LUDENS, of Sterling, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

One of the rules of the public hospital of the City of Sterling is that no physician or surgeon shall perform a major operation in the hospital unless he is a member of the staff or has in attendance, prepared for assistance in the operation, one or more members of the staff of the hospital in addition to a proper anesthetist.

Appellant is a practicing physician and surgeon residing in the City of Sterling. He is a member of the associate staff of the hospital, but not a member of the staff. He brought a suit in the circuit court of Whiteside county against the city and the members of the board of directors of the hospital to enjoin them from enforcing the rule. Issue was joined, a hearing had and from a decree dismissing the complaint for want of equity this appeal has been prosecuted.

The hospital was established by the city under the provisions of the 1919 Act relating to the establishment and maintenance of public hospitals in cities of less than one hundred thousand inhabitants. (Ill. Rev. Stat. 1939, ch. 23, par. 165, *et seq.*) That statute was repealed and replaced by similar provisions in the Cities and Villages Act. (Ill. Rev. Stat. 1941, ch. 24, art. 44, sec. 44–1 *et seq.* [Jones Ill. Stats. Ann. 21.1879 *et seq.*].)

The governing body of the hospital is a board of three directors, appointed by the mayor with the approval of the city council. The following provisions of the statute are pertinent:

Sec. 44–4. "Organization and duties of directors. . . . They shall adopt such by-laws, rules, and regulations for their own guidance and for the government of the hospital as may be expedient and not inconsistent with ordinances of the city. . . . The board in general shall carry out the spirit and intent of this article in establishing and maintaining or in purchasing and maintaining a public hospital."

Sec. 44–6. "Use of Hospital. Every hospital established or purchased under this article shall be maintained for the benefit of the inhabitants of the city in which it is established who are sick, injured or maimed. . . . The hospital shall always be subject to such reasonable rules and regulations as the hospital board may adopt in order to render the use of the hospital of the greatest benefit to the greatest number. The board may exclude from the use of the hospital all inhabitants and persons who wilfully violate those rules and regulations. The board may extend the privileges and use of the hospital to persons residing outside of the city but within this State, upon such terms and conditions as the board may prescribe by its rules and regulations."

Sec. 44–8. "Rules and regulations. When such a hospital is so established or purchased, the physicians, nurses, attendants, patients, all persons approaching or coming within the limits of the hospital, and all furniture and other articles used or brought there shall be subject to such rules and regulations as the board of directors may prescribe."

Sec. 44–10 of the statute provides:

"Equal privileges to physicians. All physicians who are recognized as legal practitioners by the Department of Registration and Education shall have equal privileges in treating patients in such a hospital."

Article 5 of the by-laws, rules and regulations adopted by the board of directors provides:

"The Staff of this Hospital shall consist of physicians and surgeons who are licensed to practice medicine in the State of Illinois and who have been organized as a medical legal staff of this Hospital and have complied with all the rules and requirements in regard to obtaining membership on the Staff, according to the rules and regulations adopted by the Staff," and an amendment thereto adopted by the board of directors is as follows:

"Resolved that additional members of the Staff of the Sterling Public Hospital may be admitted by invitation after being recommended by the Executive Committee, and after having served two years as a member of the Associate Staff. The associate members shall be comprised of doctors practicing in the community and who have had their application on file for two years. The members of the Associate Staff to be voted on by the members of the General Staff after being recommended by the Executive Committee."

The record discloses that appellant has been licensed as a physician in Illinois since 1927. He first practiced as a resident physician in a Chicago hospital for about two years, then at Rock City, Illinois, about five years, and in Pennsylvania for about two years, coming to Sterling on September 16, 1935 and since that time has practiced there. He applied for membership to the hospital staff on October 10, 1935, and was admitted as a member of the associate staff on February 7, 1938. His application for membership was accompanied by his written "Declaration," reading in part:

"I further promise, so long as I avail myself of the privileges granted me by the Board of Trustees of the Public Hospital of the City of Sterling, that I will abide by the By-laws, Rules and Regulations at present governing the work of the Hospital or any such that may hereafter be adopted by the Trustees for such government," and his letter of appointment quoted the above-

mentioned amendment to the by-laws and notified him he had been appointed thereunder.

The rule in controversy has been in effect ever since the organization of the hospital. Appellant testified that he has performed approximately one hundred twenty-five major operations at the hospital, and many minor operations, using as assistants members of the staff and physicians afterward known to him not to be members thereof.

On May 8, 1941, he sent a patient to the hospital for an appendectomy. He had engaged as an anesthetist a doctor from Rock Falls, and as his assistant a doctor whose office was in the same building as his own and who had been a licensed physician for two or three years. Being informed of the rule in controversy by the supervisor, he procured as his assistant Dr. Perry, whom he knew to be a member of the staff, and the operation was performed. Apparently in an effort to show that procuring a member of the staff as his assistant caused a delay, he testified that he and the patient arrived at the hospital at about 6:30 a.m. or within 30 minutes of that time, and that the operation began around "eight or eight-thirty." The surgical nurse who made the operating record testified the patient was admitted at 7:00 o'clock; that it took 20 minutes to sterilize appellant's instruments; that the patient was taken to the operating room at 7:30 and came back therefrom at 8:45; that an appendectomy ordinarily takes from one half an hour to an hour and that there was no delay.

Appellant also testified that on another occasion he ordered one of his patients who was hemorrhaging to the hospital, and that she had a considerable loss of blood due to a delay in the arrival of a staff doctor who stopped on the way to take care of another patient, and that the services of the doctor he proposed to use in the appendectomy were available on this occasion. He did not testify that his patient suffered any injury by

the delay, and it does not appear that the patient taken care of by the staff doctor who stopped on his way to the hospital was not an emergency case.

Appellant further testified that since the appendectomy operation he has complied with the rule as to procuring the attendance of a staff member. He testified he did not know the names of the members of the staff, and that he had asked the superintendent of the hospital and a member of the staff for the names of the persons on the staff and that they told him they did not know. The superintendent testified appellant had never asked her for such information. More than three weeks after he started this suit he wrote the superintendent calling attention to a recently posted bulletin in the operating department, ''relative to certain consultations at present deemed advisable when patients are considering having major surgery,'' and asking for the names of the doctors suitable for such consultation. The letter was unanswered by direction of the president of the board of directors. He also testified he asked Dr. Beard, a member of the staff, how to become a member thereof, but that Dr. Beard did not tell him, except to say the members were chosen at secret meetings and no record was kept. Appellant attended meetings of the staff six or eight times a year since he came to Sterling. The names of the members of the staff were kept in a book in the superintendent's office, and were on the telephone book and in the telephone booth. The list has always been available to anybody and was there in May 1941. His testimony that he did not know how to become a member of the staff is contradicted by the fact that the amendment to the rules, giving him that information, was contained in his letter of appointment as a member of the associate staff.

Dr. Charles G. Beard, one of the board of directors, testified that the hospital is a standard hospital, meeting the requirements of the American Medical Association, and has been such for over 10 years; that the rules

adopted by it conform in substance to the rules of a standard hospital and that the rule in controversy is one of the rules of a standard hospital. He further testified that when a physician applies for membership on the staff, serves his probationary period of two years, and is appointed an associate member, he may afterwards be chosen a full member of the staff by invitation from the executive committee, composed of five members of the staff, provided his qualifications are such that the executive committee feels he is entitled to become such a member; that if the committee feels his work is good and his practice ethical he is invited; that the word "invited" is used to get away from the word "election" and that there is nothing secret about it; that the committee considers his qualifications as to his work with the other doctors and their observation of him, each member of the committee being a committee of one to see if the applicant should receive his vote; that there are 18 or 20 members of the staff; that the board of directors have nothing to do with it; that he advised appellant how to become a member of the staff; that appellant asked him why he could not become a member to which he replied that he preferred not to say anything more about it inasmuch as it was a personal matter and he did not wish to embarrass either of them. He further testified there is a hospital rule to the effect that in case of an abortion or a Caesarean section all physicians, including staff members, must call in another member of the staff.

The testimony does not tend to support the allegation in the complaint that appellant had demanded of the board of directors a list of the staff members or that they had refused to furnish him therewith; nor does it support his claim that the directors permit the staff to create a "little closed corporation" which refuses to co-operate with a physician who moves to Sterling, and creates a monopoly at the expense of patients desiring to use the hospital nor does it bear out the in-

sinuation made that the staff sets itself up as a "star chamber."

The claim of appellant that the rule in controversy is unlawful because there is no standard capable of ready determination so as to enable a physician to know when he is eligible for staff membership is without merit. The amendment to the by-laws and the testimony of Dr. Beard shows the standards are fixed and definite. The amendment provides for admission to membership on the associate staff by application and probation, and to membership on the staff upon invitation after being recommended by the executive committee. The recommendation of the executive committee is based on the observation of its several members of the applicant's qualifications as to his work and his ethics, and if they are good he is invited to become a member of the staff. What other provision would be necessary to constitute any more definite standards is not suggested.

The rules adopted by the board of directors are those of standard hospitals. The rules governing admission to membership on the staff apply to all physicians alike, and tend to maintain a high degree of skill and integrity in the membership. It is obvious that rules must be adopted to protect patients in major operations from unethical or unskilled practitioners, even though they are licensed physicians. Anybody may be forced to undergo a major operation. The rule in controversy is fundamentally a provision for the public safety and the public welfare. It is in no sense for the personal benefit of the hospital or the board of directors, except in maintaining the standard of excellence and proficiency contemplated by the statute and required by the welfare of the public. It insures the attendance and, if required, the assistance of a practitioner of experience and ability in case the operating surgeon should meet with a condition to which he is not equal, so that nothing may be left undone for the benefit of the patient. Section 44–10 was never intended to prohibit the board of di-

rectors of a public hospital from adopting rules that will accomplish that purpose. Its manifest object is only to prevent discrimination, of which there is no evidence in this case.

The decree of the circuit court dismissing the complaint for want of equity is affirmed.

*Decree affirmed.*

## On Rehearing.

Counsel for appellant in their petition for rehearing states that there is not a scintilla of evidence in this record against the reputation or ability of appellant as a physician or surgeon, and that so far as he knows he may be excluded from staff membership of the Sterling Public Hospital because of social, religious or political reasons. Counsel also calls our attention to the fact that there is nothing in the rules of this hospital which provide that when a surgeon has attained a certain high degree of skill, based upon a given amount of experience that he shall then be recommended by the executive committee for membership upon the staff. This is true. It is not possible however, to prescribe by rule a standard of skill dependent upon experience. Skillfulness may be, but is not always, brought about by experience. A surgeon with only limited experience may be very skillful while one with many years of experience may be a bungler. Counsel also state that the court overlooked the case of *Henderson v. City of Knoxville,* a Tennessee case reported in 95 S. W. (2d) 97, 67 A. L. R. 652 and insists that that case establishes the principle that a duly licensed physician may not be excluded from practicing in a public hospital. What that case holds is that a duly licensed practitioner has a right to practice in the public hospitals of that State so long as he is not guilty of unprofessional or dishonorable conduct as declared by the legislature of that State and so long

as he conforms to all the reasonable rules and regulations of such institutions. There is nothing said in that case that conflicts with our holding here. The rule of the public hospital of Sterling challenged by appellant is not, in our opinion, an unreasonable one. It applies alike to all physicians and cannot, upon the evidence found in this record, be said to discriminate against appellant. The petition for rehearing will be denied.

*Rehearing denied.*