Dr. Jack Dayan (Sole Appealing Party of Four Original Plaintiffs Below), Plaintiff (Appellant), v. Wood River Township Hospital, a Municipal Corporation; Martin Langehaug et al., Defendants (Appellees).

Term No. 58–M–6.

Fourth District.

July 26, 1958.

Released for publication August 13, 1958.

Anthony W. Daly, and Emerson Baetz, both of Alton, for plaintiff (appellant).

Francis J. Manning, of Wood River, and Charles M. O'Brien, of Chicago, for defendants (appellees).

PRESIDING JUSTICE BARDENS delivered the opinion of the court.

This is an appeal by a physician from a decree entered by the Circuit Court of Madison County which sustained the action of the defendant Hospital Board in denying him appointment to its medical staff in 1956.

Plaintiff, a native of Mexico, but now a citizen of this country, received his medical education at the University of Mexico City. After interning at St. Joseph's Hospital in Kansas City, he took the necessary examination in Illinois in 1952 and was licensed to practice in this state. He commenced his practice in Wood River in 1952 and was admitted to the medical staff of defendant hospital as an associate member. Since such appointments were made on an annual basis, plaintiff reapplied in 1956, as he had in previous years, but his application was denied. He thereupon secured a temporary injunction restraining the Hospital Board from denying him use of the facilities pending a hearing before the Board on the charges made against him. Such hearing was duly held and the Board thereupon formally acted to deny plaintiff's appointment to the medical staff. On a subsequent hearing before the Circuit Court, the temporary injunction was dissolved and the action of the Board permitted to stand. By appropriate order, however, the temporary injunction was permitted to continue in force pending the outcome of this appeal.

In an exhaustive decree, the chancellor made findings which may be summarized as follows:

1. That the licensing of a physician by the State of Illinois does not carry with it an inherent right to practice in a public hospital, such right being subject to appropriate rules and regulations of the Board; that the rules and regulations of defendant Board are fair and reasonable.

2. That the right to practice in any hospital may, therefore, be suspended where there has been a failure to abide by such reasonable rules.

3. That such right may be terminated, however, only after notice and hearing in accordance with the due process of law.

4. That the hearing afforded plaintiff in this case was fully in accord with the principles of due process.

5. That the conclusion of the Board from the evidence produced at such hearing that defendant violated substantive rules of the hospital was correct.

Plaintiff's theory on appeal is based on two propositions: (1) That by virtue of his appointment to the staff in 1952 of defendant, a public tax supported hospital, plaintiff acquired a privilege or right which could not subsequently be arbitrarily taken from him and that such was done by the Board here; and (2) that the Board's action was based on their conclusion that plaintiff was not medically competent, which issue was beyond the jurisdiction of the Board because it had been determined by the state in granting of his license. On the other hand, defendant makes reference to the statutory authority vesting control of the hospital in the duly appointed Board of Directors and urges that the law, as well as public policy, dictate that appointments to the medical staff are within the sole discretion of the Board; that here plaintiff has been given the added protection of having such administrative discretion judicially reviewed, and the Board's action having not been deemed arbitrary or capricious, it should not be disturbed.

As alluded to above, defendant hospital is a tax supported public hospital whose governing Board is appointed by the County Judge of Madison County. Under pertinent rules of the Department of Public Health of the State of Illinois, the Board is responsible for the management of the hospital, including appointment of a medical staff which functions "in conformity with reasonable standards of competence." Under the by-laws of the hospital, appointments to the various divisions of the medical staff are made on recommendation of the active staff. This division is composed of doctors who by reason of experience or training "have unrestricted privileges according to their capability as determined by the active staff." The Associate Medical Staff, in which division plaintiff had held his prior appointments, is composed of physicians who have only recently applied for appointment and "whose credentials are not satisfactory for active appointment." In such division, the practitioner is required to work under the direct supervision of a committee or a designated staff member until "his clinical record indicates his fitness for promotion." When plaintiff was not recommended for reappointment to the Associate Staff for the year 1956–57, the Board required the medical staff to furnish the reason for such action. A detailed list of 14 specific charges was thereupon furnished by the medical staff. The Board then gave notice to plaintiff that it proposed to hold a hearing on such charges, a copy of which was furnished plaintiff, at which time plaintiff might present such defense as he saw fit. Hearings were duly held in the course of which extensive testimony was received from all staff members having knowledge, direct or indirect, of the charges made. The fullest latitude was given plaintiff in the presentation of his case inasmuch as the Board proceeded on the theory that the hearings were being

266

held to afford plaintiff an opportunity to refute the case made against him by the charges. The Board's conclusion followed a roll call vote which found the Board holding that 13 of the charges had been substantiated. Each charge was voted upon separately, 9 being sustained unanimously, 4 by majority vote, and one deemed unproven.

■ At the outset, we think it manifest from the controlling statutory and case authority that the licensing of a physician by the State of Illinois gives no absolute right to membership on the medical staff of a public hospital. Selden v. City of Sterling, 316 Ill. App. 455, 45 N.E.2d 329; People ex rel. Replagle v. Julia S. Burnham Hospital, 71 Ill. App. 246; Hayman v. City of Galveston, 273 U. S. 414, 71 L. Ed. 714. The granting of the privilege of staff membership is vested in the duly constituted Board acting in accordance with appropriate and fair rules and regulations. Ch. 111½, secs. 142–157, and Ch. 139, secs. 160.14 and 160.15, Ill. Rev. Stat. Plaintiff concedes this rule making power of the Board but denies the right of ouster as punishment for violation of the rules, arguing that this power in effect permits a Board to overrule the prior determination by the state that the particular physician is competent to practice medicine. This is a *non sequitur*. Obviously, a refusal to abide by rules and regulations of a hospital might bear no relation to the physician's professional competence, yet would make him unacceptable as a staff member. Licensing by the state is a prerequisite to staff membership. It is not however the only condition.

■ The larger question and the one which we find primary here is as to the Board's power to oust a staff member on the ground of lack of the requisite skill. We find this controlling inasmuch as the action of the Board admittedly turned largely upon their con-

267

clusion as to plaintiff's professional competence rather than any rule violations on his part. Plaintiff points to the procedure employed for appointment whereby members of the Active Staff (generally older, more established · practitioners), hold the lifeline on the younger doctors by virtue of the fact that their recommendation is required for appointment. This, it is argued, grants the exclusive use of a tax supported institution to the doctors who agree among themselves that they are the most competent. Admittedly, the proper functioning of this procedure depends upon the integrity and fairness of the Active Staff. But the public interest dictates that this type of continuing supervision and control of the licensed practitioner exist, for the original approval to practice given by the state is based on the applicant's factual knowledge rather than his clinical ability. Further, physical infirmities, advancing years, personal habits or other factors might well render a licensed physician no longer acceptable as a hospital staff member. Such status implies to the public that the doctor has the necessary knowledge and technique to continue in his profession and should be subject to constant reappraisal. The fact that there is no absolute, objective standard of professional skill on which such reappraisal can be based was noted by the court in the Selden case in the following excerpt:

"Counsel also calls our attention to the fact that there is nothing in the rules of this hospital which provide that when a surgeon has attained a certain high degree of skill, based upon a given amount of experience, that he shall then be recommended by the executive committee for membership upon the staff. This is true. It is not possible, however, to prescribe by rule a standard of skill dependent upon experience. Skillfulness may be, but is not always, brought about by expe-

268

rience. A surgeon with only limited experience may be very skillful while one with many years of experience may be a bungler."

On analysis, however, the suggested evils of the "oligarchy" of the Active Staff leave less to fear than the alternative prospect of potential public harm arising from unlimited access to hospital facilities by licensed physicians without regard to clinical ability. Especially is this true when, as here, the action of the staff required the approval of the hospital Board and a court of equity before it became operative. Further, when the status of the hospital is fully recognized, it is not offensive to one's sense of fairness to grant the governing Board the power to control membership on the medical staff. A hospital is not an annex to every doctor's office where the same freedom of practice as exists in the office continues. Nurses and other employees of the hospital are under the direction and control of doctors from time to time, and costly equipment and facilities are made available for their use. Liability might well be made to fall upon the hospital if their personnel or equipment were permitted to be subject to control of one lacking in some of the necessary professional skills. Under such circumstances, it is only logical that the institution have the right to safeguard its interest and the public interest as well by exercising discretion in the makeup of the medical staff. We conclude, therefore, that the Board is vested with regulated discretion in the appointment and reappointment of doctors to the staff, in the exercise of which they have the power to refuse membership on the grounds of clinical incompetence or failure to abide by reasonable rules, or both.

█ The remaining issue raised by plaintiff is that the conclusion of the Board that plaintiff did not measure up to the necessary standard of professional competence was arbitrary and capricious. Further, that

the action of the Board was dictated by the medical staff because of professional jealousy and personal resentment rather than any real incompetence. This is really the nub of plaintiff's argument: that he was the victim of hearsay criticism and personal dislike because he failed to abide by established protocol or cultivate the friendship of members of the medical staff. It is true that portions of the adverse testimony were apparently so inspired. But, in the course of the extended hearings before the Board, there was also calm, objective appraisal of plaintiff's clinical record which found him wanting. We allude specifically to the testimony of Doctor Kelly and Doctor Roberson, both senior members of the Active Staff. Doctor Kelly summarized his views as "inability to recognize proper surgical procedure, failure to call early and adequate surgical consultation, and ignorance of surgical procedures." He went on to say about plaintiff and another doctor who had been denied reappointment: "They will not listen to reason. They will not be guided. They won't learn. That is why I have changed my opinion about Dayan since 1954. I thought he was persecuted at that time. I took his part. I stood up here at the staff meetings, but in two years time I have changed my opinion surgically." Doctor Roberson testified as follows: "I have formed an opinion of Doctor Dayan's judgment in obstetrics, but not medicine and surgery. In regard to obstetrics, I feel his judgment is very poor in that he often times is not aware of complications soon enough to obtain adequate assistance in emergency. I have helped him in two or three complicated cases, and I base my opinion on that personal knowledge. Any other doctor with sufficient or normal experience could tell you they were complicated cases, and that it would be good to get another doctor to help. I have been doing consultant work in obstetrics for 15

years, and called dozens of times, but never at the twelfth hour, as I was in those cases. . . . I personally have offered my services to Doctor Dayan over the period of years he has been here and never refused him except when I was ill. He had no reason for not calling me, if he did have an excuse for not calling somebody else." This testimony is not subject to the criticism properly levelled at much of the testimony of other doctors who were called before the Board to give their views on the charges against plaintiff. Together with some other criticism of plaintiff's handling of specific cases, such testimony provides a basis for the conclusion that the Board and the Chancellor have properly exercised the discretion vested in them. While of no comfort to the plaintiff here, it is significant in assessing the fairness of the hearing before the Board that another doctor was appointed to the staff over the adverse recommendation of the staff at the same time as this action was taken against plaintiff.

It is apparent from the abstract of the testimony before the Board that personality factors ran deep and colored much of the adverse testimony against plaintiff. A clue to the cause of such feeling can be found in the following testimony of plaintiff:

"I believe that when a man has taken his examination and proved to the proper authorities that he is competent, and is given a license to practice his profession by the public authorities, then he should be allowed to practice in public hospitals. Whether he should be limited as to specialities depends on the hospital. If there are specialists there, then it would make a difference; but in a hospital where all are general practitioners, as in Wood River Township Hospital, then I can see no reason why one should have more privileges than another. If there are 20 general practitioners and one specialist, why should one general

271

practitioner have more privileges than another general practitioner? The specialist is called a specialist because he has special training; he has had four years additional training. There should not be any such thing as limited privileges, if we are all general practitioners. Every general practitioner knows what he can do. . . . He is the judge of that."

Proceeding as he did on the theory that his license gave him access to all public hospitals and that he was the sole judge of his own competence in surgery and obstetrics as well as general practice, the plaintiff could scarcely hope to find approval personally or professionally. Such views would naturally be abhorrent to one with the traditional perspective of his role in the field of medicine and would necessarily keep plaintiff from that increase in skill and technique under the guidance of his advisors which the system wisely contemplates.

We conclude that the decree below must be affirmed.

Decree affirmed.

SCHEINEMAN and CULBERTSON, JJ., concur.