J. H. Rutledge, M. D., Plaintiff-Appellant, v. St. Vincent
Memorial Hospital, an Illinois Corporation, Mother
Mary Catherine, Sister Mary Dolores, et al., Individ-
ually and as Members of the Governing Board of St.
Vincent Memorial Hospital, an Illinois Corporation,
Defendants-Appellees.

Gen. No. 65–50.

Fifth District.

February 1, 1966.

Robert Weiner, of Springfield, and Harold Broverman, of Taylorville, for appellant.

Hershey and Bliss, of Taylorville, for appellees.

GOLDENHERSH, P. J.

Plaintiff filed suit in the Circuit Court of Christian County, seeking both equitable relief and money damages. In the verified count seeking equitable relief, as amended, he alleges that defendant, St. Vincent Memorial Hospital, is a not for profit corporation, the other named defendants are members of its Governing Board, certain by-laws were adopted by the medical staff of the defendant hospital and approved by its Governing Board, plaintiff, at the time of the adoption of the bylaws, was a member of defendant hospital's active staff and had been such member for 11 years, during his tenure on the active medical staff he has never been subject to any grievances against him before any body, private or public, on March 8, 1965, plaintiff received a letter from defendants advising him that his staff privileges would not be renewed, that the credentials committee of the medical staff of defendant hospital had recommended the reappointment of all members of the medical staff for the year 1965, and that the failure to reappoint plaintiff was

"irrespective" of the recommendations of the credentials committee. The complaint also contains allegations that plaintiff has built up a substantial practice, the failure to reappoint him has caused him great damage, that the denial of staff privileges will cause him irreparable damage, and prays the issuance of a temporary injunction without notice and without bond, enjoining defendants from denying to plaintiff the use of the facilities of defendant hospital during the pendency of this suit, so long as plaintiff complies with the rules and regulations of defendant hospital. Plaintiff also alleges that defendant hospital has received large sums of money from the United States of America in the form of Hill-Burton funds, a grant from the State of Illinois, that it regularly receives payments from various governmental agencies for treatment rendered recipients of public assistance, and is the beneficiary of various tax exemptions available to non-profit or charitable corporations.

Defendants filed a motion "to strike and dismiss" wherein they state defendant hospital is a not for profit corporation, that the hospital is a charitable private institution operated by a Roman Catholic order of nuns, it is not a public hospital operated or maintained by any governmental agency, the receipt of public funds does not serve to make of defendant a public hospital, that plaintiff's staff privileges were not renewed because of plaintiff's failure to comply with the rules, regulations and standards adopted by the Governing Board of defendant hospital, that defendants have been advised that "in accordance with other provisions of said bylaws, rules and regulations, proceedings have been heretofore taken by the Credentials Committee, the Executive Committee, the Joint Conference and the Medical Staff, including a hearing at which the plaintiff was confronted with the charges made against him and given an opportunity to refute the same and as a result of all of which, it was recommended to the Governing Board the plaintiff be

dismissed from the hospital's Medical Staff or in the alternative, that his Medical Staff privileges not be renewed upon their annual expiration on March 1, 1965." The motion concludes with the statement that the judgment and decisions of defendant hospital's Governing Board are not subject to judicial review, the circuit court is without jurisdiction to grant the injunctive relief prayed, and the law count seeking money damages does not state a justiciable cause of action.

The trial court set the cause for hearing on plaintiff's prayer for temporary injunction and defendants' motion to dismiss. No evidence was heard, the matter was considered on the pleadings, and the trial court, after filing a comprehensive memorandum, entered an order wherein it denied plaintiff's prayer for a temporary injunction, and denied defendants' motion "challenging the jurisdiction of this Court." Plaintiff appeals from the order denying his application for a temporary injunction. Since no cross appeal is prosecuted by defendants, the cause is before us on the sole issue of whether the trial court erred in denying the prayer for temporary injunction.

The bylaws, by reference incorporated in plaintiff's complaint, provide that medical staff appointments are made for one year, that at the end of the year the Governing Board, may, upon recommendations of the executive committee of the medical staff reappoint all medical staff members for a further period of one year. The bylaws contain the following provision, "Should the governing board wish to take the initiative on approving or refusing an applicant, it shall always so advise the medical staff, state its reasons, and ask for recommendations. Final responsibility for all appointments or cancellations will rest with the governing board."

 Whether a petition for a temporary injunction should be granted or denied, rests largely in the discretion of the trial court, O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446. On appeal, the sole question pre-

sented is whether the trial court abused its discretion in denying the plaintiff temporary injunctive relief, Gifford v. Rich, 58 Ill App2d 405, 208 NE2d 47, and unless there has been such abuse of discretion, the order of the trial court will not be disturbed. H. K. H. Development Corp. v. Metropolitan Sanitary Dist., 47 Ill App2d 46, 196 NE2d 494. Since defendants filed no answer, the propriety of the order denying the injunction must be determined from the amended complaint, without consideration of what purport to be averments of fact in defendants' motion, and the well pleaded allegations of fact in the amended complaint must be taken as true. Dunne v. County of Rock Island, 273 Ill 53, 112 NE 342.

Counsel have filed comprehensive briefs, citing cases from many jurisdictions, involving the question of the powers of the Governing Board of a hospital to select and appoint members of its medical staff, and whether, and in what manner, it may terminate the tenure of such staff members. The determination of these issues, is, to some extent, dependent upon whether the hospital is a public institution or a private charity, and whether the action complained of was taken in compliance with, or in violation of, the provisions of applicable bylaws. Since this case is not before us on the merits, our inquiry in this area is for the sole purpose of determining whether it is so apparent that plaintiff must ultimately prevail, that the denial of the petition for injunctive relief was an abuse of discretion.

The purpose of a temporary injunction is to maintain the status quo until the case can be decided on its merits. The status quo to be preserved is the last, actual, uncontested status which preceded the pending controversy. O'Brien v. Matual, 14 Ill App2d 173, 144 NE 2d 446. Applying this rule to the case before us, the plaintiff's last actual uncontested status prior to the inception of the controversy was that of a member of the

defendant hospital's staff, by virtue of an appointment which admittedly was for one year. Opposed to his claim of right to continue in that status is the defendants' contention that the bylaws of defendant hospital, quoted above, rest final responsibility for the appointment of staff members with the Governing Board, and even though provision is made for requesting the recommendations of the medical staff, such recommendations are, at most, advisory, and need not be followed. We have not discussed the foregoing issues and contentions for the purpose of purporting to decide this matter on the merits, but to demonstrate the presence of issues which can be determined only after trial.

■ In his amended complaint, plaintiff alleges that the defendant hospital is the only hospital in Taylorville, that by reason of the denial of the use of defendant hospital's facilities, his practice is curtailed and he will suffer irreparable damage unless the injunction is issued. Unquestionably the loss of staff privileges has caused plaintiff inconvenience, and probably, loss of income, but we cannot hold that this fact, of itself, would require the trial court to enjoin the defendants from refusing to reappoint plaintiff to the staff of the defendant hospital. The bylaws provide that "final responsibility" for such action rests with the Governing Board, and the issuance of a temporary injunction would, in effect, determine for the Governing Board the manner in which that responsibility is to be discharged.

■ On the basis of the record before us, we are not prepared to say that the refusal to issue a temporary injunction was an abuse of the trial court's discretion, and the order of the Circuit Court of Christian County is affirmed.

Order affirmed.

MORAN, J., concurs.

EBERSPACHER, J., dissenting.

In his verified complaint, plaintiff further alleged that the defendant hospital is the only hospital in the Taylorville community and the only facility available to patients of plaintiff who may be in need of emergency treatment, hospital care and laboratory treatment, and that by reason of the denial of the use of defendant's hospital facilities his practice is curtailed and he will suffer irreparable damage unless the injunction is issued. Unquestionably the loss of staff privileges has caused plaintiff inconvenience, and probably, loss of income; as well as deprived the members of the public who have chosen to be plaintiff's patients, a hospital facility unless they select a physician of their second choice.

Defendants' motion "to strike and dismiss" served no other legal purpose, than for its own purpose to admit each and every material allegation of the amended complaint.[1] Such motion, denied by the trial court, with no cross appeal, does not stand as an answer to the verified complaint. The trial court, by denying defendants' motion to strike and dismiss, has permitted the verified complaint to stand, and the facts set out in it are uncontroverted, and the cause is before us on the sole issue of whether the trial court erred in denying the prayer for temporary injunction.

In the memorandum of the trial court, the court readily admitted that his conclusion with reference to denying the injunction would have been different were St. Vincent Hospital a "public" hospital, instead of a "private" hospital, recognizing the accepted rule of law that the arbitrary action of a governing board of a public hospital is

---

[1] Defendants have contended in this Court that their motion to "strike and dismiss" properly traversed the complaint as amended, although the record shows they entered "their special and limited appearance for the sole purpose of moving the court to strike or in the alternative, to dismiss the complaint of the plaintiff as amended."

subject to injunctive process while the arbitrary action of the governing board of a purely private hospital is not; in the same memorandum, however, the trial court denied defendants' motion "challenging the jurisdiction of this Court."

Defendant contends that in the absence of a controlling statute or a hospital's own rule or regulation to the contrary, the doctrine prevails in most jurisdictions that in a private nonprofit hospital admission to, or exclusion from, hospital staff or privilege rests in the discretion of the governing board and cites ample foreign authorities and including People ex rel. Repagle v. Julia Burnham Hospital, 71 Ill App 246 (1897), for such contention, see Annotation 24 ALR2d 805. Defendant further urges that Illinois courts have adapted and adhered to the distinctions between the status, liabilities, duties of private nonprofit hospitals from those of public hospitals citing the Washingtonian Home of Chicago v. The City of Chicago, 157 Ill 414, 41 NE 893 (1895), and Olander v. Johnson, 258 Ill App 89 (1930), neither of which have to do with exclusion of a physician by hospital authorities. Plaintiff urges that the defendant hospital is not immune from temporary injunction because it purports to be a private hospital, on the basis of cases arising before so-called private hospitals were recipients of public funds. Plaintiff cites Greisman v. Newcomb Hospital, 40 NJ 389, 192 A2d 817, a 1963 case, in contending that the governing boards of hospitals, whether they be private or public, must recognize that their powers, particularly those relating to staff members, are powers in trust which are always to be dealt with as such. In the Newcomb Hospital case, the New Jersey Supreme Court reviewed many cases which attempt to distinguish between private hospitals and public hospitals and held that the Newcomb Hospital, which occupied a similar position to the defendant St. Vincent's Hospital, as a private corporation, may under certain circumstances be regulated in the public

interest. Of the Newcomb Hospital, the New Jersey Court said:

"It constitutes a virtual monopoly in the area in which it functions and it is in no position to claim immunity from public supervision and control because of its allegedly private nature."

In Eaton v. Grubb, 329 F2d 710, the court held that factors not ordinarily present in the case of a charitable hospital were the basis of treating James Walker Memorial Hospital, originally built by a philanthropic citizen, and serving 75% of the white adult community, as a public hospital; and was bound by the provisions of the Fourteenth Amendment to refrain from discrimination in admission to staff membership and treatment facilities on racially discriminatory and segregated basis. One of those factors was that both the state and federal government had granted at least two capital construction subsidies, including a federal grant in 1944 under the Defense Public Works Act, but not including any Hill-Burton funds; another factor was that the hospital had a tax exempt status, and a third factor was, that the hospital had received city and county funds for the care of welfare patients.

Participation of a private hospital in the program provided by the Hill-Burton Act, 60 Stat 1041, (1946) as amended 42 USCA sec 291 et seq., subjects it to an elaborate and intricate pattern of governmental regulations, both state and federal, and deprives it of its purely private aspect, and impresses upon it a public interest as to render it an instrumentality of government. Simkins v. Moses H. Cone Memorial Hospital, 323 F2d 959 (CA 4th, 1963 cert denied 84 S Ct 793). In that case the Court, at page 969, said:

"The basic and overriding purpose of the Hill-Burton Act was to permit the states to develop pro-

grams of hospital construction that would provide adequate service to all their people."

While both these Federal cases had to do with purported private hospitals arbitrarily denying Negro doctors staff facilities, as a general proposition they hold that arbitrary action of the governing body of a purported private hospital, regardless of its policies, or bylaws, will be reviewed by the courts, in order to protect physicians as well as the public. It is obvious that members of the Caucasian race are entitled to the same protection in the law as are Negroes, and if purported private hospitals attain sufficient public status to be subject to injunctive processes to prevent arbitrary discrimination against Negro doctors, and their Negro patients, they likewise attain sufficient public status to be subject to injunctive process to prevent arbitrary discrimination against Caucasian doctors and their patients.

The allegations of the complaint, uncontroverted, and taken as true, are that Defendant St. Vincent's Hospital is the only hospital facility in the community, has enjoyed tax exempt status, and has been the recipient of federal, state and local governmental funds; [2] it has held itself out to the public as a public facility on which the community and plaintiff have become dependent for hospital facilities. I therefore conclude, that while it may be a private charitable hospital for purposes of its operation it has taken on such public aspect, that for purposes of determining how arbitrarily its governing board can act in denying staff privileges, it has the status of a public hospital, and is subject to the same injunctive

[2] Defendant has received federal funds under the Hill-Burton Act in the amount of $861,392.28, a state grant of $210,667.72, and during the fiscal year ending June 30, 1964 received from governmental agencies as payments for recipients of public assistance out of the medical payment fund of the State of Illinois the sum of $136,160.64.

process to prevent arbitrary discrimination against any doctor and his patients as is a purely public, tax-supported institution. By its participation in the Hill-Burton program alone it committed itself to a plan of the State providing adequate hospital facilities to all of the people. It should not be allowed to hold itself out to the public for purposes of public support and patronage and eligibility for public funds, as a part of a public or state plan, and then be heard to say to those who question the discretion exercised, that it is a private charity with absolute discretion, and therefore is immune from injunctive processes.

We must also accept, as is alleged, that plaintiff is qualified, has observed, obeyed and complied with all lawful rules and regulations legally prescribed to cover the conduct of physicians in their use of the hospital; that the credentials committee of the Medical Staff of the hospital recommended reappointment of all members of the medical staff, including plaintiff, and that irrespective of such recommendation the governing board purportedly terminated the staff privileges of plaintiff; likewise that plaintiff has never been delivered any written charges against him, nor been confronted by any person accusing him of wrongdoing, for the purposes of determining whether there was an abuse of discretion in denying his prayer for a temporary injunction, in the absence of issue being joined in this cause.

While the majority opinion appears to be based on the principal that the issuance of a temporary injunction rests largely in the discretion of the trial court, and recognizes that the purpose of a temporary injunction is to maintain the status quo until the case can be decided on its merits, citing O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 466, it gives little heed to other language in the O'Brien case, and assumes that in the state of the pleadings in this case there was room for broad discre-

tion. Applying the rule concerning maintenance of the status quo, here we not only find the plaintiff's last actual uncontested status prior to the controversy to be that of a member of defendant hospital staff, by virtue of an appointment which admittedly was for one year, but also in a status wherein his professional career was not jeopardized, where he enjoyed the public confidence, as well as the confidence of the members of his profession who on the medical staff of the hospital recommended his reappointment, and in a status which entitled that segment of the public who were his patients to the use of the hospital facility, and treatment therein from the physician and surgeon in which they had placed their confidence.

In the O'Brien case the court said at page 187:

"A temporary injunction should not be refused or dissolved merely because the court may not be absolutely certain the plaintiff or counterclaimant has the right he claims."

and continuing said:

"the plaintiff or counterclaimant, however, is not required upon such an application to make out a case which would entitle him, at all events, to relief at the final hearing; he need only prima facie show for this purpose that he raises a fair question as to the existence of the right he claims, present circumstances which lead to a belief that he probably will be entitled to relief, if the proof sustains his allegations, and satisfy the court that matters should be preserved in their present state and status quo until the cause can be disposed of on its merits; one important consideration upon an application for a temporary injunction is the relative inconvenience to be caused the respective parties if the application be allowed or denied." (Citing cases.)

167

In the case of Fishwick v. Lewis, 258 Ill App 402, at page 411, the court quoted the following language taken from the case of City of Newton v. Levis, 25 CCA 8th, 161, 79 Fed 715:

> ". . . . A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult and if the injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted."

In Twin City Barge & Towing Co. v. Licensed Tugmen's and Pilots' Protective Ass'n of America, 48 Ill App 2d 1, 197 NE2d 749, the court said:

> "It is not required that a plaintiff seeking a temporary injunction make out a case that is certain to prevail on final hearing, it is enough if there is shown a fair question as to the existence of the rights claimed, so that the Court is satisfied their present state should be preserved until final hearing and disposition." (Citing cases.)

In the case of Virgin v. American College of Surgeons, 42 Ill App2d 352, 192 NE2d 414, at page 422, the court quoted from an article in 42 Harvard Law Review 993, 998–1008 (1930). Chaffee, The Internal Affairs of Associations as follows:

> "Whether the 'interest of substance' which accrues to a member of a profession association is called a 'property right', 'contract right' or merely the 'member's relation to the association', there is a growing awareness that wrongful expulsion from a voluntary professional association has such a serious effect

on the ability of the professional man to successfully pursue his livelihood and that it is a judicially protectable interest."

and in that case proceeded to quote from page 197, O'Brien v. Matual, supra, as follows:

"But a court of equity will interfere where it appeals . . . or the member or subordinate body has not been afforded those rudimentary rights which will give him or it an opportunity to defend against any charges made, including reasonable notice thereof, an opportunity to be present, to confront and cross examine his or its accusers, to make a defense, and to endeavor to refute any evidence adduced in support of the charges."

I believe that St. Vincent's Hospital has become sufficiently impressed with a public aspect that the principles enunciated in Dayan v. Wood River Tp. Hospital, 18 Ill App2d 263, 152 NE2d 205, are applicable. There, suit was brought to enjoin the board of a public hospital from denying the plaintiff doctor the use of the facilities of the hospital. He secured a temporary injunction restraining the hospital from denying him use of the hospital pending a hearing before the board on charges made against him; such hearing was duly held and the board thereupon formally acted to deny the doctor's appointment to the medical staff; by appropriate order the temporary injunction was permitted to continue in force pending the appeal in the case. In that case, the ultimate holding of the court was that the plaintiff had been afforded a hearing that was fully in accord with the principles of due process, and the decision of the trial court made after the issues were joined, was amply supported by the evidence. The findings of the chancellor included a finding that the right to practice in a hospital

may be terminated only after notice and hearing in accordance with due process of law. In answer to the doctor's contention that a procedure employed for appointment, whereby members of the active staff (generally older, more established practitioners), held the life line on younger doctors by virtue of the fact that their recommendation was required for appointment, the court at page 269 of their opinion said:

". . . . the action of the staff required the approval of the Hospital Board *and a court of equity before it become operative.*" (Emphasis supplied.)

The material allegations of the verified amended complaint, uncontroverted, are sufficiently definite and positive, as to leave no room for discretion on the part of the trial court, as to whether the factual situation justified the issuance of the injunction, particularly in view of the fact that defendant had an opportunity to dispute them, and in keeping with the principles of law herein enunciated, I would reverse and remand.